## TOMPKINS v. PILOTS ASS'N FOR BAY AND RIVER DELAWARE et al.

### No. 20046.

District Court, E. D. Pennsylvania.

March 5, 1940.

Freedman & Goldstein, by Abraham E. Freedman and Milton M. Borowsky, all of Philadelphia, Pa., for plaintiff.

Lewis, Wolff, Gourlay & Hemphill, by Frederick W. Gourlay, all of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

This is a suit at law, brought under the Jones Act, 46 U.S.C.A. § 688, by the administratrix of a seaman, for the benefit of his

widow and three-year-old child. The deceased, Roger Littleton, fell through an open gangway from the pilot boat upon which he was employed and was drowned. The defendants are the owners of the pilot boat.

At the first trial of the case, the Court instructed the jury to find a general verdict and, in addition, submitted written interrogatories having to do with the issues of negligence on the part of the defendants and contributory negligence on the part of the deceased. The jury answered the interrogatories in accordance with the plaintiff's contentions, agreed on a verdict for the plaintiff, but could not agree upon the damages.

The Court ordered a partial new trial upon the single issue of damages, and postponed entering judgment for the plaintiff until after the verdict upon that issue.

The partial new trial resulted in a verdict for $8,000, apportioned, $1,500 to the widow and $6,500 to the child. The following motions are now before the Court:

(a) A motion by the defendants for judgment notwithstanding the verdict, on the ground that there was no evidence of negligence.

(b) A motion by the defendants for a new trial, in support of which sixteen reasons are presented, the last of which was the action of the Court in granting a partial new trial limited to the question of damages.

(c) A motion by the plaintiff for a second partial new trial, restricted to the question of damages, upon the ground that the amount awarded the widow, in the jury's apportionment of the verdict, was inadequate.

■ (a) The defendants' motion for judgment is denied.

The interrogatories submitted to the jury indicate what the issues of negligence were. Question 2 was, " * * * was any negligence on the part of the defendants' officers or employees involved in the removal of the steps and opening the gangway and allowing it to remain open?" And Question 4, "Did the members of the crew of the pilot boat use every reasonable means to save Littleton's life after he had fallen into the sea?" The jury's answer to Question 2 was "Yes." Their answer to Question 4 was "No."

Thus the jury found that the defendants (or their agents) were negligent in two entirely distinct and unrelated particulars. If there was sufficient evidence to justify the submission of the issue as to either to the jury, the verdict must be sustained. I am of the opinion that the submission of the second issue (Question 4) was justified by the evidence, and, therefore, need not discuss the defendants' elaborate argument that there was no evidence of negligence in connection with the open gangway.

The Court instructed the jury that it was the defendants' duty to use every reasonable means to save Littleton's life after he had fallen into the sea. This was accepted by both parties as a correct statement, no objection having been made, either by exception or by request to charge otherwise, and no complaint being made of it in these motions.

The circumstances of Littleton's drowning were undoubtedly singular. He was a good swimmer, there was only a small sea running, and the ship was under very little headway. The accident occurred at night, but an alarm was immediately given, a searchlight turned upon him, and he was in full sight of those on board from the time he fell into the sea until he drowned.

The ship put about slowly and came to a full stop. Apparently Littleton was never more than 25 or 30 feet from it. While the skiff was being lowered two life rings were thrown from the bridge, both of which fell within about four feet of him. He made no effort to lay hold of them, and there is nothing to show that he knew they were there. He kept on swimming and called out that he was all right. Then, as the skiff, which had come around under the stern of the ship, approached him, less than ten minutes after he had fallen into the water, he suddenly sank from view, without struggle or outcry, leaving only his hat floating between the rings.

On the bridge and easily available there were also luminous rings, intended for use at night, which would flare brightly when they struck the water. Those thrown to Littleton were the ordinary kind. It is entirely possible that he never saw them, and that he lost consciousness by reason of cold, cramp or exhaustion before the skiff could reach him. There is nothing to show how cold it was, except the date—October 22. The waves were a foot to a foot and a half in height, and testimony showed that an ordinary life ring floating in the water is submerged except to the extent of "something over one inch or so." Littleton had the

searchlight full upon him, and this may have made it harder rather than easier for him to see. The only reason that a luminous ring was not thrown was that the captain did not consider it necessary in view of the facts that the surroundings were well lighted, and Littleton was plainly visible from the ship.

It will be noted that the captain was not confronted with a choice between two different incompatible methods of rescue (Johnson v. United States, 2 Cir., 74 F.2d 703), in which case an error of judgment might not imply negligence. In this case there was one thing which could easily have been done and which was not done, and the jury could properly find from the evidence that it was the omission to do that one thing which caused Littleton's death.

█ ██ (b) The only reason assigned by the defendants in their motion for new trial which merits discussion is the award of a partial new trial upon the single issue of damages.

There is no doubt whatever, that, when there has been a general verdict in favor of the plaintiff, the Court may in its discretion grant a new trial limited to the issue of damages only. This may be done where a resubmission of the issue of damages is necessary because the jury has agreed upon a grossly excessive or inadequate amount, and there is no reason why it should not be done where a resubmission is made necessary by the fact that the jury has been unable to agree on any damages. The practice was not uncommon prior to the adoption of the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the Rules specifically warrant it. See Rule 59(a). The only limitation of importance upon the Court's discretion is that partial retrial for the purpose of fixing the amount of damages ought not to be allowed where the issues of liability and damages are so inextricably related that a proper verdict upon the one cannot be reached without taking into account the evidence relating to the other.

██ ██ The present suit is a death case. Evidence going to show the manner in which the drowning occurred could not conceivably have the slightest bearing upon the amount of the plaintiff's pecuniary loss. Upon all issues relating to liability, the defendants had their day in Court at the first trial, with full opportunity to submit their defenses. It would seem a grave injustice to a plaintiff, if, having submitted her claim to a jury and having obtained a verdict in her favor, she should be compelled to risk another trial with a possibility of an adverse verdict solely because the jury failed to agree upon how much her loss was.

The defendants contend that there was no general verdict for the plaintiff at the first trial. The fact is that there was, and the proceedings in Court as transcribed by the stenographer are sufficient to show it.

The Judge was not present when the verdict was taken, having requested counsel to be relieved of further attendance in Court, by reason of the fact that he was suffering considerable pain from a physical condition which sent him to the hospital 48 hours later. Counsel on both sides very considerately stipulated that the verdict might be taken by the Clerk in the absence of Court and counsel.

The stenographic record of the trial shows that when the jury returned, the following took place:

"Mr. Lilly (Deputy Clerk): Members of the Jury, have you agreed upon your verdict?

"The Jury: Yes, sir."

The Clerk then proceeded to read the interrogatories and the written answers of the jury, and the colloquy proceeded:

"Mr. Lilly: As to the damages, could you agree on the damages?

"The Forelady: We cannot.

"Mr. Lilly: You have heard the answers to the questions as I have read them to you, members of the Jury. Are those answers correct? Do you all agree to those?

"The Jury: Yes.

"Mr. Lilly: As to the question of damages you say you cannot agree?

"A Woman Juror: 11 to 1.

"Mr. Freedman: Couldn't we take the verdict as originally rendered?

"Mr. Lilly: Do I understand you cannot render the verdict that way now?

"A Woman Juror: We cannot agree on that. They did at first.

"Mr. Lilly: Do I understand that you cannot agree on the amount of damages?

"The Jury: We can't agree on the amount."

What followed is unimportant. The jury's answers to the interrogatories show beyond doubt that they had resolved all is-

sues relating to liability in favor of the plaintiff.

The suggestion of Mr. Freedman, the plaintiff's attorney, is explained by the fact that the jury had earlier returned with a verdict for the plaintiff awarding damages to the child only, under some sort of installment arrangement which, without objection from either party, they were instructed they could not do. This, of course, does not appear in the transcript of the record, but I believe I am correct in saying that counsel on both sides agree that it did occur.

I am fully aware of the distinction between special verdicts and answers to interrogatories, and I am not suggesting that, had the jury merely returned written answers to the interrogatories submitted without more, judgment could have been entered for the plaintiff. The interrogatories were not submitted as the basis for a special verdict. On the contrary, I directed the jury to return a general verdict—"either for the defendants or for the plaintiff in an amount which you will fix in case you find for the plaintiff"—and submitted the interrogatories in order that the Court upon a motion for a new trial might be advised as to how the jury arrived at their verdict, what issues were found in favor of the plaintiff and what in favor of the defendant—all to the end that if it should appear that error had been committed upon a point not necessary to the general verdict, a new trial would be unnecessary.

Leaving out of consideration the earlier and unrecorded verdict and confining the matter to what appears on the record, the jury specifically answered the Clerk's question, "Have you agreed upon your verdict?", "Yes, sir." This certainly indicates that they intended to find in favor of one or the other party, and it would be absurd in view of the answers to the interrogatories to suggest that a verdict for the defendants was intended.

■ (c) The verdict in this case was for $8,000. Under all the circumstances, a considerably larger verdict could have been sustained, but I am unable to find that the amount returned is so inadequate as to require another trial upon the issue of damages. The plaintiff's argument largely comes down to a mathematical calculation, the factors of which are the earning power of the deceased and his life expectancy according to mortality tables. However, as the Supreme Court said in Vicksburg & Meridian R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 2, 30 L.Ed. 257, "* * * it has never been held that the rules to be derived from such tables or computations must be the absolute guides of the judgment and the conscience of the jury." The plaintiff does not contend that the Court's charge in the submission of the question to the jury was erroneous or inadequate.

■ In submitting the issue of damages the Court told the jury to apportion the verdict between the widow and the child. It has been held in many cases that this is not error. However, after carefully considering the question I am satisfied that it is unnecessary, and the better practice would be to instruct the jury to bring in the verdict in a single lump sum, leaving the distribution or administration of the fund for the appropriate state court. It is significant that in enacting the Jones Act, Congress omitted the provision of the English Act upon which it was modelled, relating to apportionment of the verdict. As the Court said in Sabine Towing Co. v. Brennan, 5 Cir., 85 F.2d 478, 482: "In the case of a recovery for the benefit of a widow and her minor children, there is hardly any need to apportion the amount between them. Naturally, the minor children will receive full benefit from any award made to the mother." About the only thing apportionment seems to accomplish is to give dissatisfied parties some additional grounds for attack.

From the defendants' point of view, of course, the question of apportionment is wholly immaterial. The case of Pittsburgh, Cincinnati, etc., R. Co. v. Collard's Adm'r, 170 Ky. 239, 185 S.W. 1108, L.R.A.1918E, 273, cited by the defendant, is not quite in point. In that case the apportionment was between the deceased's father who received $6,500, and his mother who received $3,500, out of a $10,000 verdict. The Court held that the amount awarded to the father was excessive and concluded from this that the entire verdict was excessive. The Court apparently assumed that the jury determined the loss to the father and the loss to the mother and added the two together to make the verdict. This would have been the opposite of the proper method, and I greatly doubt the soundness of the Court's reasoning.

However, even so, it would not help the defendants much in their argument that the allowance to the child was excessive. In Philadelphia & R. Ry. Co. v. Briscoe, 3 Cir.,

279 F. 680, (a death case), the Circuit Court of Appeals for this Circuit sustained a verdict of $15,000 which was apportioned $3,000 to the widow and $4,000 to each of three children. The children were age 6, 10 and 12 years respectively. In view of this decision, it can hardly be said that the award of $6,500 to the three-year old child in the present case is greatly out of the way.

From the plaintiff's point of view it is to be noted that the only question really before the Court is whether the lump sum verdict of $8,000 is inadequate. The widow and child are not parties here. As I have stated, my own view is that the apportionment is not required by the Act, and hence that part of the verdict may be treated as surplusage. As to what effect the apportionment part of the verdict would have in finally settling, as between the widow and child, the rights to the fund, it is not necessary to express any opinion, nor do I.

The three motions before the Court are all denied, and judgment may be entered upon the verdict in the amount of $8,000.