**BANK OF THE SOUTH, Plaintiff,**

v.

**FORT LAUDERDALE TECHNICAL COLLEGE, INC., Defendant.**

Civ. A. No. 68–1990.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 8, 1969.

Val A. Schaff, III, New Orleans, La., for plaintiff.

Leon Sarpy, Henry Leon Sarpy, New Orleans, La., for defendant.

RUBIN, District Judge:

The issue here is whether a party waives the right to a new trial, based on his opponent's improper behavior at the original proceeding, if he fails to request a mistrial at the time he first learns of the misconduct.

Toward the end of the first day of this two-day trial, the court observed the executive officer of the defendant corporation, Mr. Lester Cotherman, apparently flirting with a female member of the jury. Cotherman, seated at the table with defense counsel, was winking at and making facial blandishments toward this juror. The court at once ordered a recess and called the matter to the attention of all counsel.

It was apparent that defendant's counsel had known nothing of his client's antics, and defendant's counsel assured the court he would take corrective action. At this time and throughout the trial defendant's counsel behaved with scrupulous propriety, and his able conduct of the defense adhered in every respect to the highest professional standards.

After the trial resumed the next morning, the court again witnessed an obvious effort by Cotherman to curry favor with another juror, and again stopped the trial. Both counsel were informed of the offending behavior. Defendant's counsel had been unaware of this infor-

mal appeal for the jury's sympathy, but he attempted to prevent further episodes by seating his co-counsel between Cotherman and the jury.

One other wordless interchange took place, unobserved by the court. On the evening of the second day of the trial, the Deputy Marshal in charge of the jury noticed one of the male jurors winking at Cotherman, and concluded this was in response to an overture from Cotherman. In the Deputy Marshal's estimation, Cotherman had probably winked at a lady juror, but her fellow juryman assumed the wink was directed at him, and returned the pleasantry. The Deputy reported his observations to plaintiff's counsel during a recess, but the matter was not then brought to the attention of the court. After the trial, the Deputy said he thought this particular juror was winking generally at people in the courtroom.

When the trial was completed, the jury returned a verdict for the defendant, Cotherman's employer.

Had the plaintiff sought a mistrial at any point during the trial, the court would have granted it. Plaintiff was given the opportunity to make such a demand each time Cotherman's overly congenial facial expressions caught the eye of any court official. Plaintiff specifically chose not to ask for a mistrial, but rather to rely on the requested instructions and the presumed strength of his own case. Having taken his chance with the jury and lost, may the plaintiff now obtain the new trial he would have received had he requested it at the proper time?

When a motion for a new trial charges that the jury was exposed to improper influences, the district court must evaluate the impact of the offending influence in the context of the entire case. "The general rule is that, unless the conduct of counsel or witnesses is such as to impair gravely the calm and dispassionate consideration of the case by the jury," the court is not obligated to suspend the verdict, Spach v. Monarch Ins. Co., 5 Cir. 1962, 309 F.2d 949. In the situation here, plaintiff itself did not think at the time that Cotherman's behavior had irretrievably marred the impartiality of the trial.

There is ample authority for the proposition that a party who purposely ignores an objectionable matter may not request relief from his own erroneous choice after an adverse verdict has been rendered.[1] "A litigant can not be permitted to speculate on the result of the jurors' misconduct," United States v. Kansas City, Mo., 8 Cir. 1946, 157 F.2d 459.[2] The moving party's own contemporaneous estimate of the prejudicial value of courtroom conduct is a significant factor in the court's subsequent appraisal of the degree to which the overall proceedings may have departed from the strictest standards of justice. If plaintiff's conscious trial strategy led to a verdict for defendant, that is not necessarily injustice.

The Federal Rules of Civil Procedure minimize the effect of gamesman-

1. "[I]t is appropriate for the court to consider whether the moving party by his or his counsel's conduct has waived the misconduct and, if so, in its discretion to deny the motion," 6A Moore, Federal Practice (2d Edition, 1954) ¶ 59.08 [4], p. 3801, and cases collected at n. 55.
Curtis Publ. Co. v. Butts, 5 Cir. 1965, 351 F.2d 702, *affirmed*, 1967, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094; Johnson v. Hill, 8 Cir. 1960, 274 F.2d 110; Stanczak v. Pennsylvania R. Co., 7 Cir. 1949, 174 F.2d 43; Langer v. United States, 8 Cir. 1935, 76 F.2d 817.

See cases collected in 62 A.L.R.2d 298, 308, at § 7, p. 309.

2. "[C]ounsel could not sit silently by and take chances on a favorable verdict and then complain when it turned out to be unfavorable. He is not permitted thus to 'speculate upon the chances of a verdict.' * * * Having been silent when it was his duty to speak, he will 'not be heard to speak when it is his duty to be silent,'" Upton v. Harrison, 4 Cir. 1934, 68 F.2d 232, cert. denied, 292 U.S. 633, 54 S.Ct. 718, 78 L.Ed. 1486.

ship on the outcome of trials, but they leave counsel with the responsibility for deciding upon his own plan for conducting a lawsuit. It is not the court's function to let a lawyer who guesses wrong replay the game. Of course, the court is not merely an umpire in a sporting contest, letting the lawyers conduct the game as they will and merely calling "strike" or "ball" when they choose to pitch. Where the events at trial are so disruptive that they make the proceeding unfair or a travesty of justice, the court should preserve the integrity of the judicial process regardless of any waiver by a party.

In this case, in view of the grossly improper conduct of the defendant's executive officer, the resolution of the problem is not free from doubt. But it seems to me the better course here to deny the motion for a new trial. The jury's verdict is supported by the evidence, and it is not clear that Cotherman's behavior resulted in improper influence. The plaintiff had full knowledge of the advances Cotherman was making to the jury, and chose to take its chances with that jury. Plaintiff's counsel may have assumed Cotherman's conduct would be ineffectual or he may have thought it would redound to plaintiff's benefit when observed by the jurors.

Counsel now attempts to avoid the consequences of his failure to object by suggesting that he did not properly appraise the amount of prejudice that would result. This means only that he thought he would win and didn't. The miscalculation does not automatically entitle plaintiff to a second chance, particularly when, as here, the court believes neither the rights of the client nor the cause of justice are unduly affected by the contrast between counsel's courtroom chance-taking and hindsight's rueful prudence.

The motion for a new trial is therefore denied.