Anthony J. **CAPELLA,** as surviving spouse of Mary E. Capella, Deceased, Plaintiff,

v.

L. R. **BAUMGARTNER,** M. D., et al., Defendants.

Anthony J. **CAPELLA,** as Administrator of the Estate of Mary E. Capella, Deceased, Plaintiff,

v.

L. R. **BAUMGARTNER,** M. D., et al., Defendants.

Civ. Nos. 72–895, 72–896.

United States District Court, S. D. Florida.

April 26, 1973.

Gerald F. Richman, Frates, Floyd Pearson, Stewart, Proenza, & Richman, Miami, Fla., for plaintiff.

Robert M. Montgomery, Jr., Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, P.A., West Palm Beach, Fla., for defendants Baumgartner and Aetna.

P. Dianne Weaver, Kirsch, Druck & Mills, Fort Lauderdale, Fla., for defendant Pearl.

Frank G. Cibula, Jr., Walton, Lantaff, Schroeder, Carson & Wahl, West Palm Beach, Fla., for defendant Hospital.

## ORDER

FULTON, Chief Judge.

This cause was considered upon plaintiff's motions for new trial and to interview jurors. The Court has carefully considered each of plaintiff's asserted grounds for new trial, reviewed the record and determined that the motion for new trial must be denied.

In accord with Local Rule 16(G), plaintiff has moved the Court for leave to allow counsel to interview two jurors,

Mary White, the jury forewoman, and Clara Bond, within limitations as to time, place and circumstances proscribed by the Court. Plaintiff seeks the interview to ascertain whether the verdict in this cause is subject to legal challenge for the following reasons:

1. The question asked by the jury during their deliberations regarding Dr. Baumgartner's actual knowledge of the purpose of the BUN test indicates that the jury may have ignored the Court's instructions and the law upon the standard of care required of a physician;

2. The Court denied plaintiff's request to have the jury advised subsequent to the reading of the modified Allen Charge that the jury would be discharged if a unanimous verdict could not be rendered;

3. The plaintiff's request in number 2 above was crucial under the circumstances of this case raising an inference that the jury may have used an improper method such as a quotient verdict or an agreement to give in by a certain time or hour in arriving at the verdict; and

4. The jury may have been improperly influenced in reaching a verdict for the reason that the husband of the jury forewoman, who was present in the courtroom during the last two days of trial, spoke with the defendant, Dr. Baumgartner, on several occasions. It is suggested that impropriety may exist since the jury forewoman, Mrs. White, her husband and another juror, Mr. Peacock, traveled to and from trial together, a distance of over 100 miles each way during this two-day period.

Counsel for the plaintiff has submitted an affidavit in support of number 4 above stating that he personally ob-served the defendant, Dr. Baumgartner, and Mr. White, the husband of the jury forewoman, conversing on several occasions, although the substance of these conversations is not known. Defendants Baumgartner and Pearl have filed a memorandum opposing the motion to interview jurors alleging that the plaintiff, Mr. Capella, was also seen conversing with Mr. White; however, defense counsel has not submitted an affidavit to this effect. Defendants maintain that interviews of the jurors are unnecessary and unwarranted in this instance, particularly in view of the Court's cautionary instructions to the jury that the jurors were not to discuss the case among themselves nor with anyone else during the course of the trial. This Court agrees that the motion to interview jurors must be denied as unnecessary and unwarranted based upon the grounds asserted by plaintiff.

The bases for plaintiff's motion to interview jurors set forth above are three-fold: (1) possible disregard of the Court's instructions or misapplication or misapprehension of the law; (2) possible resort to an improper method in reaching a verdict such as a quotient verdict or compromise; and (3) possible improper influence by the husband of the jury forewoman because of his conversations with the defendant and his subsequent close association with two jurors. It is significant to note that plaintiff seeks to interview only Mrs. Bond and Mrs. White, not the entire panel. An interview of Mr. Peacock has not been requested, even though he travelled with Mr. and Mrs. White.

■ A challenge to a jury verdict must be supported by legally competent proof, and it is well settled that, as a general rule, a juror cannot impeach his verdict after the jury has been discharged. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 714 (1912); York Chrysler-Plymouth, Inc. v. Chrysler

Credit Corp., 447 F.2d 786, 794 (5th Cir. 1971); Womble v. J. C. Penney Co., 431 F.2d 985, 989 (6th Cir. 1970); United States v. Schroeder, 433 F.2d 846, 851 (8th Cir. 1970). This rule is applicable whenever the proffered testimony or affidavit of the juror relates to the mental process of any juror or of the jury in arriving at a verdict. *McDonald, supra; Hyde, supra*; Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245, 1247 (3rd Cir. 1971); Morgan v. Sun Oil Co., 109 F.2d 178, 180 (5th Cir. 1940). Matters inherent in the jury process falling within the no-impeachment rule include challenges that the verdict resulted from compromise, coercion, majority vote, improper motives, misapplication or misapprehension of the law, or a quotient verdict. *See, McDonald, supra*; Complete Auto Transit, Inc. v. Wayne Broyles Engineering Corp., 351 F.2d 478 (5th Cir. 1965); United States v. 4,925 Acres of Land in Grant Parish, La., 143 F.2d 127 (5th Cir. 1944); *Morgan, supra*; 6A Moore's Federal Practice ¶ 59.08 [4] at 3811–12 (2d ed. 1972).

■ An exception to the rule exists as to matters of an overt character not inherent in the jury's decisional process. Thus, a juror may testify to facts concerning an extraneous influence, such as acts or declarations outside the jury room, but the juror is incompetent to testify as to the effect of the influence upon his mental process in arriving at the verdict. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); Gafford v. Warden, United States Penitentiary, 434 F.2d 318, 320 (10th Cir. 1970); United States ex rel. Owen v. McMann, 435 F.2d 813, 819–820 (2nd Cir. 1970).

■ Plaintiff's grounds for the motion to interview jurors based upon the jury's possible misapplication of the law and improper method of reaching a verdict relate to matters inherent in the jury process. Presupposing the actual existence of grounds, evidence elicited upon such matters from the jurors would not subject the verdict to legal challenge due to the no-impeachment rule. Thus, an interview of the jurors for the reasons advanced by plaintiff would not provide legally competent proof, assuming such grounds were revealed, to attack the verdict.

The third basis for the motion suggesting possible improper influence relates to an overt, extraneous matter which may fall within the exception to the no-impeachment rule. However, it appears to this Court that ordering an examination of Mrs. White, Mr. Peacock or any other juror or the participants in the conversations is unwarranted without a further indication that some misconduct actually occurred. The Court repeatedly cautioned the jurors during trial to keep their own counsel and not to discuss the case among themselves or to permit anyone to discuss the case with them. The jury was also instructed that all deliberations were to be conducted in the jury room and no place else. Plaintiff's request to interview jurors on this premise seems purely speculative and is without adequate foundation.

■ Moreover, plaintiff's attempt to interview jurors on the basis of conceivable improper influence is untimely. It was incumbent upon counsel for the plaintiff to request the Court to make an inquiry as to the substance of the conversations to allow the Court to ascertain any improprieties at the time counsel first observed the incident or at least sometime during the two-day period during which the conversations occurred and were noted. Plaintiff may not remain silent until after the jury returned an unfavorable verdict and then seek to inquire as to possible misconduct. It was counsel's duty to inform the Court of the conversations and possible improprieties as soon they came to counsel's attention. *See* Bank of South v. Fort Lauderdale Technical College, Inc., 48 F.R.D. 136 (E.D.La.1969), aff'd,

**316**

425 F.2d 1374 (5th Cir. 1970); Texas and New Orleans R. R. v. Underhill, 234 F.2d 620 (5th Cir. 1956); United States v. Kansas City, Mo., 157 F.2d 459 (8th Cir. 1946). Concluding that plaintiff's grounds constitute an insufficient justification for inquiry since such grounds could not lead to a valid, legal challenge to the verdict, the motion to interview jurors must be denied. Thereupon, it is

Ordered and adjudged that plaintiff's motions for a new trial and to interview jurors be and the same are hereby denied.