Mary VIZZINI, Admx. of the Estate of Salvatore Vizzini, Deceased

v.

FORD MOTOR COMPANY.

Civ. A. No. 74–421.

United States District Court, E. D. Pennsylvania.

Sept. 16, 1976.

Oscar S. Schermer, Philadelphia, Pa., for plaintiff.

Joseph V. Pinto, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This is a wrongful death and survival action based on negligence and strict liability for a defective product. A jury returned a verdict of $473,298 against the defendant, and the defendant has filed motions for a judgment N.O.V. and a new trial. We will deny the motions.

### FACTUAL BACKGROUND

The decedent in this case was killed on September 1, 1973, when his 1972 Ford pick-up truck skidded through a T-intersection near Seabreeze, New Jersey, and struck a tree. The vehicle left more than 363 feet of skid marks, which were in a straight line and had been left by only one set of wheels. The plaintiff's theory of recovery was that

the front brake system was defective because the self-adjuster cable on the left front wheel was not connected properly, so that the left front brake shoe would not expand to compensate for wear. Plaintiff also introduced testimony concerning leakage from the brake cylinder which might have contributed to the accident. The defendant introduced expert testimony that the alleged defects could not have caused the accident to happen as it did. In addition, there was testimony that the decedent had slept very little in the 24 hours before the accident, and that a blood alcohol test performed at the autopsy revealed a blood alcohol concentration of .168, which exceeds the percentage required for a presumption of intoxication under both New Jersey and Pennsylvania law.

At the conclusion of the liability phase of the case after six days of trial, the jury deliberated for about two days, and then rendered a verdict in favor of the plaintiff. This verdict was based on the jury's answers to six interrogatories. The jury determined that both the defendant and the decedent were negligent, and their negligence was a proximate cause of the accident. In addition, the jury found that the vehicle was defective and unreasonably dangerous, and that the defect was also a proximate cause of the accident. The verdict on liability was then recorded, and the jury was told that they would now hear testimony on damages, since they had found the defendant liable.

When the presentation of evidence was completed, the jury again began to deliberate. On the third day of deliberations, the jury sent a note asking that the judge speak with one dissenting juror. In response to this message, we asked the jury to agree upon a statement of their problem and present it to the Court in writing. We received the following note (Court Exhibit 7):

"Your Honor: "Going back to the first decision, which presented via interrogatories with 'Yes' and 'No' answers required, the problem of the dissenting juror began. This juror's answers were different

by two 'Nos' from the rest of the jurors' answers of all 'Yeses'. In an effort for unanimity, this juror compromised and changed the juror's No answers, stating that if a poll of each juror was taken, this juror would be compelled to state said juror's true feelings. Said juror was confused by the questions of the interrogatories and sincerely felt that the negligence stated and agreed against both plaintiff and defendant would negate all blame and a 'draw' situation would result.

"The shock of finding that the result of the interrogatories placed all liability on the defendant resulted in said juror being unable to accept the basis for awarding the plaintiff on the facts presented.

"In the second half of the trial said juror realizes that a figure of award must be agreed upon now and the juror has made a real effort to come up and meet the decided amount of the remaining jurors. They in turn have truly tried to 'come down' from their original amount. There remains too large a difference in these amounts and said juror feels juror cannot in real consciousness charge the defendant, whom said juror does not feel warrants such an award.

"We have arrived at this awards to date:

"One juror $250,000
"Seven jurors $417,483."

Defendant's counsel moved for a mistrial as to all aspects of the case, and we declared a mistrial as to damages only, after ascertaining that the jury was deadlocked on this issue. Subsequently, we denied a motion by the defendant for reconsideration of our decision to retry the issue of damages only.

The damage issue was then retried to a different jury, which returned a verdict of $421,000 under the Survival Act and $52,298 under the Wrongful Death Act. Defendant then filed its Motions for a Judgment N.O.V. and New Trial, which are the subject of this opinion.

DISCUSSION

In its Motion for a Judgment N.O.V., the defendant contends that the plaintiff failed

to establish sufficient facts from which the jury could reasonably conclude that a defective self-adjusting cable or a leak in the brake cylinder could have caused the accident in question. The defendant also argues that the evidence established that the accident resulted from the decedent's reckless misuse of the vehicle. We considered these same arguments at trial, and reach the same conclusion here. Although plaintiff's causation evidence was "very thin" (N.T. 454), it was sufficient to go to the jury. The jury determined that the vehicle was defective, and that the defect was a proximate cause of the accident. It is the jury's function to weigh the evidence and determine questions of fact. *Lewin v. Metropolitan Life Insurance Co.*, 394 F.2d 608 (3d Cir. 1968). We see no basis for disturbing the jury's decision, since we believe there was sufficient evidence to create questions of fact on the causation issues. Defendant's motion for a judgment notwithstanding the verdict will be denied.

Defendant raises numerous reasons for granting a new trial. The most significant and most interesting contention centers on the unusual events leading up to a mistrial, and on our decision to declare a mistrial as to damages only. The defendant argues that the statement we received from the jury (Court Exhibit 7) clearly indicates that the jury verdict on liability was not unanimous. Because the liability verdict was tainted, the Court should have granted a mistrial on all aspects of the case. Although there is some merit in the defendant's argument, we continue to believe that our original ruling was proper.

■ First of all, a juror is incompetent to give evidence impeaching the validity of a verdict. This long established rule is now expressed in Rule 606(b) of the Federal Rules of Evidence:

> "*(b) Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or to dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

In this case, the defendant is attempting to impeach the jury's verdict with a statement from the jury (Court Exhibit 7) which refers to a juror's thoughts during deliberations. Such evidence is incompetent under Rule 606(b), and similar evidence has been excluded in many cases. After the verdict is rendered, a juror cannot testify concerning his mental processes, his possible misunderstanding of the law or of the effect of his verdict, or that the verdict resulted from compromise. See *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Hyde v. United States*, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 602 (5th Cir.) *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Capella v. Baumgartner*, 59 F.R.D. 312 (S.D.Fla.1973); 76 Am.Jur.2d *Trials* §§ 1220, 1222.

■ The defendant attempts to distinguish the general rule on several grounds. First, it argues that because this evidence was received inadvertently in response to a question by the Court, the evidence can be considered without interfering with the policy of preventing juror harassment. This argument was soundly rejected by the Third Circuit Court of Appeals in *Domeracki v. Humble Oil and Refining Co.*, 443 F.2d 1245 (3d Cir.) *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971). In *Domeracki*, the jury had attached some scratch paper to its verdict, which indicated to the trial judge that the jury may not have followed his instructions. In approving the trial judge's decision to disregard

the scratch paper, the Court of Appeals noted that a court does not have the authority to inquire into a jury's decisional process, "even when information pertaining to the deliberations is volunteered by one of the jurors." 443 F.2d at 1247.

■ The defendant next argues that the rule against impeaching a jury verdict applies only after a judgment has been entered and the jury discharged. See 6A *Moore's Federal Practice* ¶ 59.08. However, the cases cited by the defendant in support of this position involved statements by jurors that occurred before a verdict was recorded, or, on one occasion, before it was announced. See *Cavallaro v. Williams*, 530 F.2d 473 (3d Cir. 1975); *United States v. Pleva*, 66 F.2d 529 (2d Cir. 1933). The Court in *United States v. Pleva*, supra, explicitly qualified its decision that statements made by a juror impeaching his verdict could be considered:

> "It should be noticed that we are not dealing with a situation where a verdict has been regularly returned and recorded with nothing at the time to show that it was other than the unanimous agreement of the jurors based on the evidence and the law." 66 F.2d at 533.

Unlike the Court in *Pleva*, we are concerned with a statement received after a verdict was accepted and recorded. Throughout the damages phase of the case and two days of deliberations on damages, there was not the slightest indication that the verdict on liability might be subject to attack. That verdict had been recorded in open court, without objection from the parties. The fact that no judgment was entered and that the same jury continued to deliberate on another aspect of the case should not impair the validity and finality of the jury's verdict on liability. Under the circumstances, we conclude that Court Exhibit 7 is not competent evidence for challenging the verdict on liability, and we were not obligated to grant a mistrial on the liability phase of the case on the basis of the jury's statement.

■ Excluding the jury's statement does not dispose of all of the defendant's arguments against our decision granting a mistrial as to damages only. The defendant also argues that the mere failure of the jury to agree on damages creates an inference that the verdict on liability was tainted by compromise. Such an inference, if it arises at all, is not compelling. The fact that a jury cannot agree on damages after rendering a verdict on liability might be due to any number of reasons, including different interpretations of the credibility of the damage witnesses or of the proper law to apply in calculating damages. There is absolutely no competent evidence showing that the verdict was a compromise. Inferring from the jury's failure to agree that this was the case is sheer speculation which we will not indulge in. See *Great Coastal Express, Inc. v. International Brotherhood of Teamsters, etc.*, 511 F.2d 839, 847 (4th Cir. 1975).

■ Finally, the defendant contends that a new trial was required as to all issues because the liability questions were close. If issues of liability and damages were so connected that a jury would have to consider the same evidence in resolving each issue, then a new trial limited to damages would be improper. See *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Similarly, if the jury's verdict is so inadequate that it appears that the verdict was based on a compromise, a new trial ordinarily should be granted on all issues. See *Feinberg v. Mathai*, 60 F.R.D. 69 (E.D.Pa.1973). In this case, however, the damages and liability issues are not interwoven, and there is no competent evidence to indicate that the liability verdict was a compromise. In addition, trial of the liability issues had required six trial days, and retrying those issues would entail substantial costs in both time and money. In these circumstances, granting a new trial on the issue of damages only was proper. See *McSparran v. Hanigan*, 225 F.Supp. 628 (E.D.Pa.1963), aff'd, 356 F.2d 983 (3d Cir. 1966); *Tompkins v. Pilots Association for Bay and River Delaware*, 32 F.Supp. 439 (E.D.Pa.1940). As the Court stated in *Tompkins*:

"It would seem a grave injustice to a plaintiff, if having submitted her claim to a jury and having obtained a verdict in her favor, she should be compelled to risk another trial with a possibility of an adverse verdict solely because the jury failed to agree upon how much her loss was." 32 F.Supp. at 441.

The defendant has cited a number of Pennsylvania cases which held that a new trial limited to the issue of damages should be granted only in unusual circumstances, when the liability issue is absolutely clear. See, e. g., *Gagliano v. Ditzler*, 437 Pa. 230, 263 A.2d 319 (1970); *Phelps v. Paul L. Britton, Inc.*, 412 Pa. 55, 192 A.2d 689 (1963); *Friedman v. Matovich*, 191 Pa.Super. 275, 156 A.2d 608 (1959). These cases do not preclude a limited new trial in this case. First, in each of the cases cited by the defendant there was some indication that the jury had rendered a compromise verdict. Second, none of the cases involved a bifurcated trial, which serves to separate the liability and damages issues. Most importantly, the cases all applied Pennsylvania law, which does not control our interpretation of Rule 59 of the Federal Rules of Civil Procedure. In the circumstances of this case, our decision granting a new trial limited to the issue of damages was proper.

■ The defendant has raised numerous potential errors in the damages phase of the case as grounds for a new trial. These arguments are without merit. The plaintiff introduced sufficient evidence of the decedent's personal maintenance from which the jury reasonably could estimate that figure in calculating the loss of future earnings. See *Blackburn v. Aetna Freight Lines, Inc.*, 368 F.2d 345 (3d Cir. 1966).

■ Testimony by plaintiff's actuary concerning lost fringe benefits was properly admitted. Fringe benefits are a legitimate part of an award in a death case, and the task of determining the proper amount to include was a matter for the jury to resolve from the evidence in the case. Plaintiff's actuary was subjected to a long cross-examination about fringe benefits, and the defendant was free to introduce contradictory evidence. Thus, the defendant was not prejudiced by the actuary's testimony, even if a portion of his figures may have duplicated other categories of damages or represented unaccrued benefits of the decedent alone. The jury was able to evaluate the testimony on this matter.

■ Evidence of the decedent's income tax expenses was properly excluded. Pennsylvania law is clear that in fixing damages for lost earning capacity, income tax consequences should not be considered. *Girard Trust Corn Exchange Bank v. Philadelphia Transportation Co.*, 410 Pa. 530, 538, 190 A.2d 293 (1963). The defendant has cited the Superior Court's apparent approval of a cross-examination of a plaintiff's actuary which revealed that his direct testimony had not taken into account payroll deductions for taxes. *Gallagher v. Four Winds Motel-Hotel*, 233 Pa.Super. 1, 335 A.2d 394 (1974). We do not interpret this brief comment as indicating that the Court intended to alter the settled Pennsylvania rule stated in *Girard*. We also note that we instructed the jury that the award would not be subject to federal income taxes. *Domeracki v. Humble Oil and Refining Co.*, 443 F.2d 1245 (3d Cir. 1971).

■ The defendant has contended that the plaintiff's actuary improperly reduced the projected lost earnings to present worth. Plaintiff's actuary performed the reduction to present worth by using a figure of six percent per year simple interest. This was in accordance with the law of Pennsylvania. *Brodie v. Philadelphia Transportation Co.*, 415 Pa. 296, 203 A.2d 657 (1964).

■ Plaintiff's evidence of a three percent growth factor in income was properly admitted. In challenging this evidence, the defendant relies on several recent Third Circuit cases excluding evidence of inflationary trends. *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132 (3d Cir. 1973); *Magill v. Westinghouse*, 464 F.2d 294 (3d Cir. 1972). However, neither of these cases completely rules out the use of economic growth testimony. Both cases held only that inflation-

ary trends cannot be considered, and that testimony of economic growth trends must be supported by competent evidence of future salary and economic trends. In this case there was sufficient economic testimony to support a three percent per year growth rate in wages due to increasing productivity. Consequently, we believe that the plaintiff's evidence of a three percent growth factor was properly admitted, and we note that another judge in this district recently reached the same conclusion. See *Thomas v. American Cystoscope Makers, Inc.*, 414 F.Supp. 255, 270 (E.D.Pa. 1976). Of course, the weight that should be given to this evidence is a matter for the jury.

 The defendant next challenges our decision to exclude expert testimony of non-use of seat belts in mitigation of damages. Defendant was prepared to produce evidence that the decedent would not have been killed if he had been wearing his seat belt. This evidence was excluded because it is not clear that Pennsylvania courts would permit such a defense, and because allowing a seat belt defense would create extremely difficult problems of measuring damages, especially in a death case.

Counsel have found no reported Pennsylvania cases dealing with the use or non-use of a seat belt as a factor in mitigating damages. Decisions on this issue in other jurisdictions have gone both ways. Several jurisdictions specifically permit the jury to consider the non-use of a safety belt as a failure to mitigate damages. See, e. g., *Yocco v. Barris*, 16 Ill.App.3d 113, 305 N.E.2d 584, 586 (1973); *Spier v. Barker*, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (N.Y.Ct. of Appeals 1974). A greater number of jurisdictions have refused to permit the jury to consider such evidence. See, e. g. *Britton v. Doehring*, 286 Ala. 498, 242 So.2d 666 (1970); *Nash v. Kamrath*, 21 Ariz.App. 530, 521 P.2d 161 (1974); *Moore v. Fischer*, 31 Colo.App. 425, 505 P.2d 383 (1973); *Lipscomb v. Diamiani*, 226 A.2d 914 (Del.Super.1967); *Hampton v. State Highway Commission*, 209 Kan. 565, 498 P.2d 236 (1972); *Derheim v. N. Fiorito Co.*, 80

Wash.2d 161, 492 P.2d 1030 (1972). Although it is difficult to predict how the Pennsylvania courts would decide this question, we believe that on the facts of this case, evidence of non-use of a seat belt should not be considered in mitigation of damages. First of all, the seat belt defense inevitably raises problems of conjecture. Not only must the jury determine what actually happened, it also must determine what would have happened if the seat belt had been used. See *Lipscomb v. Diamiani*, 226 A.2d 914, 918 (Del.Super.1967). If the jury is permitted to find that the decedent would have lived, the problem of conjecture is compounded. The plaintiff might be required to introduce evidence of future earnings loss based on the fact that the decedent died, and additional evidence based on the possibility that he might have been disabled in any number of ways. It is unfair to saddle the plaintiff with this burden, and the problems of confusion and speculation are obvious.

Permitting a seat belt defense in mitigation of damages in a death case would lead to other procedural problems. The Wrongful Death and Survival Acts are premised on a person actually dying. Allowing a seat belt defense might prevent the plaintiff from recovering certain elements of damages, such as funeral expenses, even though such damages clearly were sustained. Thus, the seat belt defense would result in a form of comparative negligence. Since comparative negligence was not yet the law in Pennsylvania, the defendant should not be permitted to inject such principles.

It is also significant that the only case cited by the defendant where a seat belt defense was approved in the context of a products liability case has been reversed. In *Horn v. General Motors Corp.*, 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976), the California Supreme Court ruled that evidence of non-use of a seat belt was properly excluded by the trial court. A seat belt defense is essentially a claim of contributory negligence, since the defendant is claiming that the injured person's failure to use the seat belt was unreasonable. Be-

cause contributory negligence is not a defense to an action based on strict liability in tort, the seat belt evidence is irrelevant and should be excluded. As to the defendant's contention that non-use of a seat belt should be considered in mitigation of damages, the Court stated:

> "Defendants' cognate claim that the proffered evidence was relevant to prove that some of plaintiff's damages could have been avoided by reasonable action on her part is again merely another word formulation of the same inadmissable claim of contributory negligence." 131 Cal.Rptr. at 84, 551 P.2d at 404.

In our case, although the plaintiff sued the manufacturer of the vehicle on claims of negligence as well as strict liability, the jury's verdict against the defendant on liability was based on strict liability. Thus, in the damages portion of the trial, the reasoning of the court in *Horn* is applicable. Evidence of non-use of a seat belt should be excluded, since it is akin to a claim of contributory negligence, which is not a defense in a strict liability case. Other than the now reversed lower court decision in *Horn*, the defendant has cited no cases allowing a seat belt defense in a suit against the manufacturer of a vehicle.

We believe that the Pennsylvania courts would follow the majority position and not permit a defendant to assert a seat belt defense. Until the legislature requires drivers and passengers to use safety belts, there is really no basis for such a defense. Moreover, even if the Pennsylvania courts were inclined to permit some kind of defense based on non-use of a seat belt, this is an especially inappropriate case for such a defense, because it is a death case based on products liability. Thus, our exclusion of the defendant's evidence pertaining to non-use of a seat belt was proper.

■ The defendant next argues that a new trial is required because the jury's verdict under the Survival Act was excessive. The jury returned a verdict of $421,000 under the Survival Act and $52,298 under the Wrongful Death Act. The defendant is quite correct in its assertion that the ver-

dict under the Survival Act is excessive. On the other hand, it is equally clear that the verdict under the Wrongful Death Act is inadequate. The jury obviously reversed its answers to the interrogatories. There is nothing else to indicate that they failed to follow the court's instructions in calculating the total amount of damages. Under these circumstances, the jury's mistake must be considered a harmless error. Rule 61 of the Federal Rules of Civil Procedure provides that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." This principle has been applied in a similar situation to avoid the necessity of a new trial. *Smith v. Philadelphia Transportation Co.*, 173 F.2d 721, 727 (3d Cir.), *cert. denied*, 338 U.S. 819, 70 S.Ct. 63, 94 L.Ed. 497 (1949). The Pennsylvania Supreme Court also has held that a mistake by the jury in assigning damages to the Survival Act and the Wrongful Death Act is not grounds for a new trial. *Siidekum v. Animal Rescue League*, 353 Pa. 408, 45 A.2d 59 (1946).

The defendant relies on *Magill v. Westinghouse Electric Corp.*, 464 F.2d 294 (3d Cir. 1972), wherein the Court held that a new trial was required where the jury's verdict under the Survival Act was excessive, even though the total verdict may not have been excessive. The Court in *Magill* discusses this issue only in the context of the excessive verdict awarded in the Survival Act. In our case, while the Survival Act verdict is excessive, it is equally clear that the Wrongful Death Act verdict is inadequate. This indicates that the jury merely reversed the figures without otherwise disregarding the Court's instructions. Moreover, the Court in *Magill* did not mention its earlier decision in *Smith* holding in an identical situation that the error was harmless. We believe *Smith* is the more persuasive precedent. The total verdict against the defendant herein was supported by the evidence. The jury's mistake of reversing its answers to the interrogatories does not require that the damages issues be tried for a third time.

The defendant's final contention is that a new trial should be granted because the verdict was against the weight of the evidence. We find that the record contains sufficient evidence to support the verdict. The fact that the jury could have reached a different result does not require that a new trial be granted.

Defendant's motions for a judgment notwithstanding the verdict and a new trial will be denied.