**Ralph W. MOORES, Jr., Plaintiff,**

v.

**NAVITRADE S. A. OF PANAMA, Defendant.**

**Civ. No. 78–195–P.**

United States District Court, D. Maine.

June 17, 1982.

Nathan Greenberg, Boston, Mass., Harold C. Hamilton, Bangor, Me., for plaintiff.

Paul Vielmetti, Portland, Me., for defendant.

## OPINION AND ORDER DENYING MOTION FOR NEW TRIAL

CYR, District Judge.

Following the return of a jury verdict, judgment was entered for the defendant on March 15, 1982. On March 22, 1982 the plaintiff filed a motion for a new trial pursuant to Fed.R.Civ.P. 59, asserting that the jury verdict was (1) rendered as a result of the jurors' failure to follow the instructions of the Court and (2) contrary to the clear weight of the evidence.

Accompanying the motion is the affidavit of an agent of the plaintiff, who inquired of one juror, following the verdict, as to the bases for the jury verdict.[1] The plaintiff further relies upon a jury request that the deposition testimony of Frederick Harry Copson be made available to them.[2]

The jury returned a negative response to the first special verdict question: "Was Navitrade S/A of Panama, the owner of the *Seaventure I*, negligent?" All subsequent special verdict questions were left unanswered, including those concerning causation (Question # 2) and contributory negligence (Question # 3).

The plaintiff argues that the affidavit of its agent and the jury request concerning the Copson deposition indicate that the jury did not follow the court instruction that they first decide whether the defendant was negligent. Therefore, plaintiff argues, their finding that defendant was not negli-

1. The affidavit includes the following representations:

   The juror stated that they (meaning the jury) found plaintiff Moores was standing in a place where he should not have been after being warned not to stand there, and that was the reason the jury found against him. The jury also felt Moores should have had more live witnesses.

2. The deposition testimony received at trial and read again to the jury upon their request consisted of the following:

   Q. So, did you do it in this case?
   A. After the first draft, I told them to stay back, keep away because we had trouble after the first draft and the second draft, so I told them to stay out of the way.
   Q. You did that by hollering down, right?
   A. Yeah.

   Q. And did you give a reason, did you say stay out of the way because we're having some trouble?
   A. Yup, which we had up to that time, each draft.
   Q. Did the men heed your advice?
   A. Yes, to the best of my knowledge, they did. I didn't see anybody out there.
   Q. And when you say stay out of the way, do you mean stay out of the square of the hatch? Where's the best place to be down there? Do you have (sic) recall people being told not to stand on the inshore side of the winch?
   A. Yes.
   Q. Is there a reason for that?
   A. Oh, if the winch breaks, the cable breaks or anything, the paper will go inshore.

gent was improperly based on their belief that the plaintiff was contributorily negligent.

■ The defendant responds that the alleged post-verdict juror statement is incompetent for purposes of determining the propriety of the jury verdict, and that their request for the Copson deposition does not necessarily indicate that the jury ever reached the issue of contributory negligence.

■ The general rule is that "for the purpose of overturning a verdict, the testimony of jurors is incompetent to prove any matter that is inherent in the jury process of arriving at a verdict, and hence cannot be used to show . . . misapprehension or misapplication of the law. . . ." 6A *Moore's Federal Practice*, ¶ 59.08[4] at 59–148, 149 (2d ed. 1974). In considering a contention that a jury verdict had been coerced, the First Circuit observed that it "is the court's function to determine solely whether the verdict represents the juror's position; the court should not inquire into the reasoning process or motivation behind the verdict." *Roy v. Star Chopper Co., Inc.*, 584 F.2d 1124, 1136 (1st Cir. 1978) (citations omitted).

The nonimpeachment rule, codified in Federal Rule of Evidence 606(b), has been applied in the face of assertions that a jury misapplied or misconceived the law. *See, e.g., Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245, 1247–48 (3d Cir. 1971) [although trial judge, following jury verdict, inadvertently received scrap paper evidencing that jurors did not compute damages as instructed, this was not competent evidence on motion for new trial]; *Rotondo v. Isthmian Steamship Co.*, 243 F.2d 581 (2d Cir. 1957) [post-verdict statements by jurors indicating significant misapprehension as to

applicable law do not justify inquiry by court into reasoning behind the verdict]; *Capella v. Baumgartner*, 59 F.R.D. 312 (S.D. Fla.1973) [although question asked by jurors during deliberations indicated that jury *may* have ignored court instructions and the law, nonimpeachment rule prohibits inquiry of jurors following their discharge].[3]

There having been no showing that it comes within an exception to Fed.R.Evid. 606(b), the Court rules the proffered affidavit inadmissible.

The claim of jury misconduct is left to rest entirely on the following request by the jury: "We request Mr. Copson's deposition."[4] The defendant insists that "there could have been any number of reasons for this request (e.g. inability of one or more jurors to recall the subject matter of the testimony or, possibly, questions as to the number of loads between adjustment of the winch and the accident)." Upon consideration of the briefs and oral arguments of counsel and the context in which the jury request arose, the Court is of the firm opinion that the verdict should stand.

Neither the plaintiff nor the defendant called Copson as a witness, notwithstanding the fact that Copson's hatch tending responsibilities required that he coordinate the lowering, by the allegedly defective ship's winch, of the rolls of paper being loaded into the hold where plaintiff was working at the time of the accident. Counsel for the defendant read into the record one page from the transcript of Copson's 40–page deposition testimony.[5] The plaintiff did not offer any portion of the Copson deposition.

The jury heard testimony that Copson was the hatch tender on duty at the time of the accident. The jury must therefore have been well aware of the fact that Copson

---

3. For recent applications of the nonimpeachment rule in the Fifth and Ninth Circuits, see *Martinez v. Food City Inc.*, 658 F.2d 369, 372–74 (5th Cir. 1981); *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980).

4. The Court responded to the request by instructing the court reporter to read that portion of the Copson deposition which had been read into evidence at trial by counsel for the defendant.

5. *See* note 2 *supra*.

may have had the best opportunity to witness the occurrences during and immediately before the rolls of paper fell into the hold where plaintiff was working.

The exact language of the jury request must be carefully considered: "We request Mr. Copson's deposition." The jury request may very well have reflected their desire to be provided with the *entire* Copson deposition, inasmuch as Copson appears to have been in the best position to observe the accident and its prelude, but had not been called as a witness. The jury could readily have observed that only a very small part of Copson's 40–page deposition was read to them. As reasonable persons not fully cognizant of evidentiary strictures, the jury may well have hoped that the entire deposition would be made available during their deliberations.

Furthermore, as defendant suggests, the jury may merely have been requesting the refreshment of their recollection of the previously read portion of the Copson deposition. The trial extended for three days and the awareness by the jury of the potential importance of Copson's testimony could reasonably have prompted their request, in order that they not overlook any bearing it might have had on the question of the negligence of the defendant.

Neither of these explanations is implausible. In fact, each is more plausible than the inference of jury misconduct drawn by the plaintiff.

The plaintiff further argues that a new trial is required because the verdict is contrary to the weight of the evidence.[6]

The plaintiff argues in particular that the negligence of the defendant in failing to repair the winch adequately is established by the uncontradicted testimony of the plaintiff's witnesses, especially that of Mr. Ingles, the winchman, and Mr. Fraser, the supervisor. The testimony of these witnesses contained no specifics concerning the nature of the repairs or adjustments requested by the stevedore or performed by the defendant. The undisputed fact that, immediately after the repairs or adjustments were made by the defendant, the winch did lower at least one draft of paper without mishap could reasonably have supported a finding that the defendant had exercised reasonable care in repairing or adjusting the winch. Furthermore, on this undisputed evidence the jury may reasonably have determined that operator error, rather than *any* negligence of the defendant, caused the paper to dislodge into the hold.

The verdict was not contrary to the clear weight of the evidence.

It is ORDERED that the plaintiff's motion for new trial is DENIED.

---

**6.** A motion for new trial is directed to the sound discretion of the trial court and will be reversed only for abuse of that discretion. In considering a motion for new trial based on an allegation that the verdict is against the weight of the evidence, the trial court will be found to have abused its discretion only if it refused to grant a new trial when the verdict was against the clear weight of the evidence. *Johnson v. A/S Ivarans Rederi*, 613 F.2d 334, 351 (1st Cir. 1980). *See Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 990 (1st Cir. 1978), *see generally* 6A *Moore's Federal Practice*, ¶ 59.08[5] at 59–152 through 59–165 (2d ed. 1974).

On a motion for a new trial—unlike a motion for a directed verdict or for a judgment notwithstanding the verdict—the judge may set aside the verdict even though there is substantial evidence to support it. 11 Wright & Miller, *Federal Practice and Procedure*, § 2806 at 43 (1973). *See Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 200 (1st Cir. 1980).