Louise **BLACKBURN**, Administratrix of the Estate of Albert A. Blackburn, Deceased,

v.

The **AETNA FREIGHT LINES, INC.,** Appellant.

No. 15863.

United States Court of Appeals Third Circuit.

Argued June 17, 1966.

Decided Nov. 15, 1966.

Thomas J. Reinstadtler, Jr., Pittsburgh, Pa. (Frederick N. Egler, Egler, McGregor & Reinstadtler, Pittsburgh, Pa., on the brief), for appellant.

Paul E. Moses, Pittsburgh, Pa. (Robert B. Ivory, Evans, Ivory & Evans, Pittsburgh, Pa., on the brief), for appellee.

Before GANEY and SMITH, Circuit Judges, and KIRKPATRICK, District Judge.

## OPINION OF THE COURT

KIRKPATRICK, District Judge.

Albert A. Blackburn, while operating a tractor-trailer unit on October 17, 1963, was killed in a collision. Wrongful death and survival actions under the Pennsylvania statutes initiated by his widow resulted in a verdict of $80,000 in the former action and $22,000 in the latter. Motions for a new trial were denied by the Court and this appeal followed.

Liability is not disputed, nor is the correctness of the Court's charge upon the measure of damages. The only questions presented by this appeal have to do with the admissibility of evidence upon the damage issue and its sufficiency to support the verdict.

### I

■ Under both the Wrongful Death Act and the Survival Act it was necessary for the plaintiff to prove two things —the probable future earnings of the deceased for the probable term of his life and what part of his earnings would have gone for his own maintenance and expenses. To prove probable earnings, the plaintiff's evidence showed that Blackburn was 57 years old at the time of his death. He was in good health, strong and active. For the greater part of his life, he had been an operator of a tractor-trailer unit either as owner of the equipment or as an employee driver.

The widow testified that when he owned his own truck he was in business as a "broker," an employment based on contracts or arrangements by which he leased or hired himself and his truck to companies engaged in freight transportation. He had worked in that type of employment until sometime in 1960 at which time the company which employed his services discontinued the broker system. He tried working independently for a time but found that he could not make a go of it, sold his truck, and took employment as a driver. At the time of his death, his pay for one year amounted to $6,732.00.

His wife, who had joined in and was familiar with his income tax returns and to whom he turned over all his pay checks, testified that when he was a broker his gross earnings were between $15,000 and $18,000 per year. The expenses of operating his business amounted to between $5,000 and $6,000, which would make his net some figure between $9,000 and $12,000.

The evidence as to what he did with his earnings came primarily from his widow. The deceased was a good husband and father and was devoted to the welfare and comfort of his family. He was industrious, a competent operator, and a person of steady, sober habits. The plaintiff summarized her testimony upon the point as follows: " * * * he always brought the check, gave it to me * * * Well I would say he didn't spend ten cents out of a dollar on himself; he took his money for expenses, which wasn't very much; I often wondered how he done it, but he never spent much money. Q. Where did the rest of the money go, for whose benefit? A. For our benefit, for the home and the children and me. Q. Was that just for a year or so that he was like that, or was that all through his life? A. It has been all through our married life."

■ Reading the plaintiff's testimony in connection with the entire evidence offered by her, it appears that there was sufficient evidence to support the jury's verdict upon both factors on which it was grounded, namely, the probable earnings of the deceased and the cost of his maintenance. Certainly, it lacked mathematical exactness and was far from precise or fully detailed, but under the law of Pennsylvania it is not essential that it should be.

■ "The law does not require that proof in support of claims for damages or in support of claims for compensation must conform to the standard of mathematical exactness * * * If the facts

afford a reasonably fair basis for calculating how much plaintiff is entitled to such evidence cannot be regarded as legally insufficient to support a claim for compensation." Smail v. Flock, 407 Pa. 148, 154, 180 A.2d 59, 62. "We have never held the damages that are not capable of *exact ascertainment* are for that reason not recoverable * * * Our law only requires that a reasonable quantity of information must be supplied by plaintiff so that the jury may fairly estimate the amount of damages from the evidence." Ashcraft v. C. G. Hussey and Co., 359 Pa. 129, 132–133, 58 A.2d 170, 172.

## II

The appellant contends that a new trial should be awarded because the trial court admitted testimony of the deceased's widow and son-in-law as to the deceased's intention to go back into business as a broker instead of continuing as an employee-driver.

His wife testified, "Just about a month before he was killed he told me he had an opportunity to go back as a broker, and fortunately the company he was working for he liked real well, they liked him, they were going to even help to back him up to get his new equipment, and he was—said about in April he would be back in April for himself." This testimony was supplemented by the son-in-law's statement, "He was going back into business. I was with him when he was looking at trailers—tractors and trailers. Q. How long was that before his death? A. About a year before it happened. Q. You say he was looking for tractors and trailers you mean? A. He was going back in business for himself; he said there was twice the amount of money."

■■ It is too well settled to require discussion that a declaration of a state of mind or intention is admissible to prove that the declarant actually had such intention. As to the inferences which the jury may draw from that fact, in the present case it would be wrong to treat the evidence as though it were offered as proof that Blackburn, had he lived, would have gone into the brokering business, though we think that the ruling in Mutual Life Insurance Co. of New York v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 606, is broad enough to sustain its admission for that purpose. The subject of the court's inquiry here is Blackburn's earning power as indicative of his probable earnings. Taken in connection with his proved ability and experience, the fact that he felt himself able to resume business for himself and was minded to do so is something which had a definite bearing upon his potential as an earner—his earning power in general and his probable future earnings in particular. The late Judge Goodrich's opinion in Nuttall v. Reading Company, 3 Cir., 235 F.2d 546, a case in which declarations of a deceased employee were held admissible to prove his state of mind, contains an interesting discussion, and it is noteworthy that the opinion says that such declaration of intention may also be used to establish "such other things as proof of a state of mind tends to establish." See also United States v. Annunziato, 2 Cir., 293 F.2d 373; 2 Morgan, Basic Problems of Evidence 218, 236, 289, 291; and McCormick on Evidence, Section 273.

As a matter of fact, the evidence in the present case of the deceased's statements of his future plans is little more than corroboration of other evidence as to his earning power which the jury already had before it. It had been shown that he had had some 14 years experience as a broker-driver, that, while so engaged, he earned a great deal more than he did as an employee, and that, though his employer had discontinued the brokering business for two or three years, that business was still very much alive. Even if no statements by the deceased as to his intention had been put in evidence, the Court could have properly instructed the jury that they might find that he had greater earning power than his wage as an employee indicated. If nothing else, his statements as to his intention negatived the thought that he might

have abandoned any idea of going back to brokering.

■■ The appellant contends that the Court should not have permitted the jury to consider what the deceased might have earned as a self-employed broker inasmuch as his employment as such depended upon the ownership of a tractor-trailer as well as his operation of it. Under Pennsylvania law, income or earnings derived from a business requiring investment of capital cannot usually be accepted as a measure of earnings, but "* . * * (T)here are exceptional cases of small, personal businesses where little capital or labor is needed and where in consequence the profits are the direct result of the owner's labor and so are the best available measure of his earning power." Sherin v. Dushac, 404 Pa. 496, 499, 172 A.2d 577, 578. The present is such a case. Blackburn, when he was engaged in the brokering business, owned a truck, but essentially he was a truck driver and a salesman for his services.

The judgment of the District Court will be affirmed.

Albert V. Bryan, Circuit Judge, and Haynsworth, Chief Judge, dissented.