James **WHITTLE** et al.

v.

**Gordon J. SCHEMM** et al.

**Civ. A. No. 73–1846.**

United States District Court,
E. D. Pennsylvania.

Nov. 3, 1975.

Anthony S. Minisi, Albert C. Braslow, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiffs.

Harold B. Marcus, Philadelphia, Pa., for Schemm and Knudsen.

L. Carter Anderson, Rawle & Henderson, Philadelphia, Pa., for Guistino.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Defendants Knudsen Trucking, Inc. and Gordon J. Schemm have moved the Court for a judgment notwithstanding the verdict and for a new trial. After carefully considering all the grounds urged by the defendants, the Court has determined that it must deny the motions.

This action for personal injuries was tried in November, 1974 and resulted in a jury verdict in favor of plaintiffs James and Mary Whittle and their son, Richard, against defendants Schemm and Knudsen, and in favor of defendant Lorenzo Guistino. The suit arose out of a motor vehicle accident which occurred on June 12, 1972 on the Pennsylvania Turnpike. The injured plaintiff, Richard Whittle, who was then 18 years of age, was a passenger in an automobile operated by defendant Guistino. Defendant Schemm was the employee of Knudsen Trucking, Inc. and was operating its tractor-trailer.

■ At the time of the accident, defendant Guistino was traveling in a westerly direction on the Pennsylvania Turnpike in the right lane at an estimated speed of 60 to 65 miles per hour approximately ten car lengths behind an automobile being operated by James Whittle, father of the injured plaintiff.[1] Mary Whittle, mother of the injured plaintiff, was a passenger in the automobile operated by her husband. As the Whittles approached the exit ramp leading from the King of Prussia service plaza, they saw the tractor-trailer driven by Schemm on the exit ramp, and moved into the left lane. Defendant Guistino, who first saw the tractor-trailer when it was adjacent to the curbing of a grass

---

1. For purposes of this motion, the evidence and the inferences to be drawn from it are considered in the light most favorable to the plaintiff, the jury winner. *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471 (3d Cir. 1973); *Eberle Tanning Co. v. U. S.*, 342 F.Supp. 1039 (M.D.Pa.1972).

plot which separates the exit ramp from the Turnpike, collided with the trailer when Schemm failed to yield the right of way and came out onto the highway directly in front of Guistino.

Defendants Knudsen and Schemm assert five grounds in support of the motions for a new trial and judgment notwithstanding the verdict.[2] First, they argue that the Court erred in refusing to instruct the jury with respect to superseding cause. Second, they claim error in the failure to properly instruct the jury with respect to degrees of negligence. In their third, fourth and fifth arguments, the defendants claim that the Court erred in permitting Dr. Leshner's testimony to be considered by the jury. Dr. Leshner was an expert witness called by the plaintiffs to establish that Richard had the ability to become an architect; he also testified to Richard's reduced earning capacity based on plaintiff's contention that Richard was not able to continue his college education.

*Failure to Charge on Superseding Cause.*

At the conclusion of the case on liability, counsel for defendants Knudsen and Schemm asked the Court to charge the jury on "superseding cause". They now argue that the Court's failure to do so constituted reversible error. With respect to this issue, the Court explained to the jury that the plaintiff must show that the defendants were negligent and that their negligence was a proximate cause of the accident. The Court further defined the terms "proximate cause" and "negligence" and explained that the jury could find that the accident was proximately caused by the negligence of either defendant or of both defendants. (N.T. 4–78, 4–72). The defendants do not take issue with this portion of the charge, but take the position that the Court should have charged on superseding cause.

■■ Inasmuch as the Pennsylvania court[3] have adopted the position of the Restatement of Torts, 2d §§ 404 and 447 on this issue,[4] we start with the Restatement's definition of superseding cause, which is as follows:

A superseding cause is an act of a third person or other force which by its intervention prevents the [original] actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.[5]

To constitute an intervening cause under the circumstances presented by this case, the act of the third person (Guistino, the driver of the car in which plaintiff was a passenger) must be a negligent act. This principle is clearly stated in the landmark case of *Kline v. Moyer*, 325

---

2. Defendant Guistino, who was exculpated by the jury's verdict, has not joined in this motion.

3. Pennsylvania law applies since federal jurisdiction here is predicated upon diversity of citizenship. *Gorso v. Bell Equipment Corporation*, 476 F.2d 1216 (3d Cir. 1973); *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177 (3d Cir. 1972).

4. *See, e. g., Estate of Flickinger v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *White v. Rosenberry*, 441 Pa. 34, 271 A.2d 341 (1970); *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 130 A.2d 123 (1957); *Kline v. Moyer*, 325 Pa. 357, 191 A. 43 (1937).

5. Section 447, entitled Negligence of Intervening Acts, states as follows:
The fact that an intervening act of a third person *is negligent in itself or is done in a negligent manner* does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent. (Emphasis supplied).

Pa. 357, 364, 191 A. 43, 46 (1937), on which defendants rely. The *Kline* case delineates the circumstances under which the jury must be charged on the issue of superseding cause:

> Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and *thereafter, by an independent act of negligence, brings about an accident,* the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause. Where, however, the second actor does not become apprised of such danger *until his own negligence,* added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties. (Emphasis added.)

On the issue of liability, the jury returned a verdict in favor of defendant Guistino. The Court charged the jury as follows:

> Negligence is the doing of some act which a reasonably prudent person would not do or it is the failure to do something which a reasonably prudent person would do when prompted by considerations which ordinarily regulate the conduct of human affairs. (N.T. 4–69).
>
> .  .  .  .  .  .
>
> Well, by "proximate cause" I mean the cause which is a substantial factor in bringing about an accident. The question of causation is for you, the jury, to determine and you determine that from the evidence that you have heard and seen. (N.T. 4–70).
>
> Now you, the jury, may find that the accident was proximately caused by the negligence of both Gordon Schemm and Lorenzo Guistino and Knudsen Trucking, as long as the negligence of each is a substantial factor in bringing about the accident.
>
> Under the evidence in this case, you may find that the accident was proximately caused by the negligence of either or the negligence of both.
>
> I want to say to you now that the mere fact that an accident happened, just standing alone, does not permit you to draw the inference that the accident was caused by anyone's negligence.
>
> It is only if you find the standard of care which one party owed to another, which standard of care was breached, the breach of which proximately caused the accident in question, can you then . . . find negligence on the part of that party to the action. (N.T. 4–71).

Pursuant to the Court's charge, the jury's verdict is a finding either that Guistino was not negligent or if negligent, that his negligence was not a proximate cause of the accident. Hence, there was no negligent act on the part of Guistino which could intervene as a superseding cause.

A case similar to the one at bar is *St. John v. Kepler,* 360 Pa. 528, 61 A.2d 875 (1948). There Justice Jones found that there was no error in the trial court's refusal to submit to the jury as a separate issue the question of superseding cause and stated:

> There was no occasion for submitting to the jury, as a separate and special issue, the question of Ganoe's negligence as a superseding cause of the accident. *And, if his is the actionable fault, that fact would have been reflected in an exculpation of the defendants by the jury's verdict. Consequently, they were not harmed by the Court's refusal to charge as requested.* (Citations omitted). (Emphasis added).

360 Pa. at 553, 61 A.2d at 878.

We believe that the Court's conclusion in *St. John* is particularly apposite here. The jury exculpated defendant Guistino and found that he was not negligent. Therefore, Guistino's actions could

not possibly have been considered such negligence as to supersede that of defendants Knudsen and Schemm and relieve them of liability.

In *Dorsey v. Yoder Company*, 331 F. Supp. 753, 764 (E.D.Pa.1971), a case predicated on products liability, the Court used the same reasoning in denying the motion of defendant, the manufacturer of the machine in question, for a judgment n. o. v. The Court held that since the jury found the third-party defendant employer of the plaintiff, free from negligence, it was impossible for the employer's activities to have constituted a superseding cause. *St. John* and *Dorsey* clearly show that the failure to charge on superseding cause did not harm defendants Knudsen and Schemm.

*Degrees of Negligence.*

█ During the jury's deliberations, it asked the following question" "Can one party be guilty at a lesser degree?" (N.T. 4–84). The Court answered the question by explaining to the jury that in this case they were not to find any degrees or percentages of negligence and then called its attention to the original charge. The Court repeated that the jury had to determine if Schemm was negligent and if his negligence was a proximate cause of the accident, and if Guistino was negligent and if his negligence was a proximate cause of the accident. The jury could find that the accident was proximately caused by the negligence of both Schemm and Guistino or by either or neither one of them. (N.T. 4–87–88).

Knudsen and Schemm now claim that the charge on negligence was misleading in that the Court did not include the phrase "however slight" in its instructions to the jury. The Court specifically refused to include this phrase

in its instruction when answering the jury's question on the grounds that the Court had not used this term in its original instruction to the jury and that it would confuse the jury. (N.T. 4–88–89). The Court finds no error [6] in failing to include the phrase "however slight" in its instructions. As stated by the Pennsylvania Supreme Court in *Whitney v. Von Hintz*, 437 Pa. 448 at 454, 263 A.2d 889 at 892 (1970):

> As in all cases questioning the accuracy of a charge to the jury, we must not take the challenged words or passages out of the context of the whole charge, but must look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Wilson v. Pennsylvania Railroad Co.,* 421 Pa. 419, 422, 219 A.2d 666 (1966); *James v. Ferguson,* 401 Pa. 92, 97, 162 A.2d 690 (1960).

*Dr. Leshner's Testimony.*

Defendants argue that allowing the jury to consider the question of Richard's reduced earning capacity based upon Dr. Leshner's testimony that prior to the accident Richard had the ability to become an architect constituted reversible error. They contend that the testimony of Dr. Leshner, plaintiff's expert witness, was based upon an inadequate foundation and should have been stricken. They did not challenge Dr. Leshner's qualifications as an expert. Rather, they claim that the evidence on which he based his testimony was inadequate.

█ It is well established that the admission of an expert's opinion evidence is a matter left to the discretion of the trial court. *Laubach v. Haigh*, 433 Pa. 487, 252 A.2d 682 (1969). If a witness

---

6. In *McCay v. Philadelphia Electric Company*, 447 Pa. 490, 291 A.2d 759 (1972), the Pennsylvania Supreme Court stated that the correct charge in connection with *contributory negligence* is that "a plaintiff cannot recover if his own negligence, however slight, contributes to the happening of the accident in a proximate way," 447 Pa. at 495, 291 A. 2d at 762 (1972). However, there appears to be no rational basis or legal authority for insisting that the phrase "however slight" be included in a charge on the negligence of the defendant.

is properly qualified, he may testify, *Moodie v. Westinghouse Electric Corp.*, 367 Pa. 493, 80 A.2d 734 (1951); however, he cannot base his opinion upon facts which are not warranted by the record. If a witness has any reasonable pretensions to specialized knowledge on the subject under investigation, he may testify, and the weight to be given his opinion is for the jury. *Kuisis v. Baldwin-Lima Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974); *Griffith v. Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 233 A.2d 896 (1967). The question here presented, i. e., whether there was sufficient evidence in the record to serve as a basis for Dr. Leshner's testimony that prior to the accident Richard had the ability to become an architect, is one that was properly left to the jury's consideration. *Bochar v. J. B. Martin Motors, Inc.*, 374 Pa. 240, 97 A.2d 813 (1953).

The record indicates that Dr. Leshner, who has extensive experience in vocational and employment counseling, based his findings that Richard could have become an architect on an interview with Richard and a review of his educational record. Although defendants contend that Dr. Leshner's testimony lost its validity after cross-examination, we have previously stated that it is the function of the jury to ascertain the weight to be accorded an expert's conclusions. The jury was specifically charged that:

> If you should decide that the opinion of an expert witness was not based upon sufficient education and experience and training, or if you should conclude that the reasons in the support of that expert's opinion are not sound, of if you feel it is outweighed by other evidence in the case, you may disregard the expert opinion entirely of that particular witness. (N.T. 6–232).

Dr. Leshner testified that Richard expressed a desire to become an architect. In *Blackburn v. Aetna Freight Lines, Inc.*, 368 F.2d 345 (3d Cir. 1966), the trial court had allowed the deceased's widow and son-in-law to testify as to the deceased's intention to go back into business as a broker. In affirming the admission of this testimony, Judge Kirkpatrick stated: "It is too well settled to require discussion that a declaration of a state of mind or intention is admissible to prove that the declarant actually had such intention." 368 F.2d at 348. Therefore, the fact that Richard desired to enter the architectural profession is further evidence on which Dr. Leshner could rely. Accordingly, we find that Dr. Leshner's personal interview and examination of Richard's educational reports, coupled with Richard's statement that he wished to become an architect, supplied an adequate foundation for his expert testimony.

The defendants contend that in order to submit the question of Richard's ability to become an architect to the jury, the plaintiffs had to prove not only Richard's inclination and ability to enter this profession, but that Richard had taken some meaningful steps toward realizing that objective. (Brief of defendants, pgs. 10–11).

Although in many of the cases which have permitted reference to the reduced earning capacity of a student, the student was already enrolled in a specialized training program leading to a career at the time of the injury,[7] there appears to be no requirement to this effect.[8] Inasmuch as Richard was a first year student at a junior college and testified that his studies were interrupted as a result of the injuries that he sustained in the accident, particularly the double vision, the issue of Richard's

7. *See, Frankel v. Heym*, 466 F.2d 1226 (3d Cir. 1972); art student—future as a commercial dentist; *Springer v. George*, 403 Pa. 563, 170 A.2d 367 (1961); first year student at a teachers' college—future as a teacher.

8. *See, Hart v. Forchelli*, 445 F.2d 1018 (2d Cir. 1971); college freshman—future as an attorney; *Williams v. U. S.*, 435 F.2d 804 (1st Cir. 1970); nine year old boy—future as a naval officer.

ability to become an architect was properly submitted to the jury.

Dr. Leshner testified that because Richard's diplopia, or double vision, prevents him from continuing his college education, Richard is limited to the average earning potential of a person without a college education. Defendants brand this testimony as "clearly error", claiming that Doctors Balistocky and Schatz, the ophthalmologists called by plaintiffs, admitted that there was no reason why Richard couldn't read for a normal length of time by putting a patch over one eye. However, an examination of the record reveals that this is only part of their testimony. Dr. Balistocky explained that although some people are able to use a patch, others are not, since "individuals differ in their ability to cope with the situation." (N.T. 6–15). When asked on cross-examination if Richard would be able to read for a *nominal* period of time with one eye covered (occluded), Dr. Schatz replied: "Yes, I would think that at least—you know, there are some difficulties in that, how patients tolerate occluders: but at least he should not have the symptoms of double vision when reading." (N.T. 6–52).

█ The statements of the two ophthalmologists indicate that it was not error to allow Dr. Leshner to testify that Richard's earning capacity was limited to that of non-college graduates. As hereinbefore mentioned, when an expert, such as Dr. Leshner, evinces an opinion that is based on facts or testimony in the record, it is the jury's function to determine what weight, if any, should be given to his testimony. Here there was sufficient evidence for the jury to conclude that Richard could not continue his college studies.

For all of the above reasons, the Court concludes that defendants' contentions in support of their motions lack sufficient merit for the Court to order a new trial or grant a judgment notwithstanding the verdict.