## Adams v. Rossi

512

*Carol A. Black,* for plaintiff.
*Kevin J. Ruane,* for defendant Rossi.

GOLDMAN, *J.,* December 14, 1995—This matter was before the court on defendants' Rossi's and Philadelphia Newspapers Inc.'s motion for summary judgment. The motion was filed after the court granted defendants' motions to preclude evidence relating to plaintiffs' claims for damages. For the reasons set forth below, defendants' motion for summary judgment was granted.

## I.

Viewed in the light most favorable to plaintiffs as the non-moving parties, the record in this case reveals the following. In June 1990, plaintiffs filed suit under Pennsylvania's Wrongful Death and Survival Acts, 42 Pa.C.S. §§8301 and 8302, to recover damages for the death of Vanetta Gray, arising from a motor vehicle

accident allegedly caused by the negligence of defendants James Rossi and his employer Philadelphia Newspapers Inc. Plaintiffs claimed that on June 3, 1988, defendant Rossi, driving a newspaper delivery van owned by his employer Philadelphia Newspapers Inc., negligently struck and killed 25-year-old Vanetta Gray, a pedestrian. At the time of the accident Ms. Gray was allegedly unmarried and the mother of a 6-year-old daughter.

A first-level settlement conference in the case was scheduled for April 22, 1994, before a settlement master. Both counsel failed to appear. Plaintiffs' counsel again failed to appear at a subsequent settlement conference on June 26, 1995; defense counsel did attend. The settlement master reported that as of that date, June 26, 1995, fully five years after the start of the lawsuit, no depositions had been taken, and no expert reports had been produced or exchanged in the case.

On August 3, 1995, plaintiffs filed a petition for extraordinary relief to depose defendant Rossi and to conduct additional discovery. In the space provided on the petition asking plaintiffs to set forth the reasons for filing their motion past the relevant cut-off date, plaintiffs wrote, inter alia, that: (1) Stokes Mott, Esquire, prior counsel for plaintiff, had become "terminally ill and disabled" and (2) plaintiffs were "not aware of a discovery deadline, nor has opposing counsel provided plaintiffs with a copy of a court order determinative of discovery deadlines." Defendants, in opposing the motion, asked the court to enforce the relevant March 18, 1994 deadline established by the court's Administrative Order 94-3, since plaintiffs had failed to explain why they had not conducted any discovery in the five years since filing their suit.

In his order of September 29, 1995, denying that petition, the learned and Honorable John W. Herron reasoned that plaintiffs' discovery request did indeed violate the Civil Trial Division's Administrative Order 94-3, which established March 18, 1994 as the cut-off date for pre-trial motions, including discovery motions, in cases like the instant one, captioned October 1989 to June 1990. Hence, any discovery after that date was untimely, disruptive of the court's calendar and prejudicial to defendants on the eve of trial.[1]

At a pre-trial conference on September 19, 1995, trial was set for November 6, 1995. At the conference, plaintiffs advised defendants, *for the first time,* that they planned to introduce at trial two experts who would testify regarding plaintiffs' damages, David Bunin, an "economic vocational expert" and Daniel Brown, a "liability expert." As a result, following the conference, defendants filed a motion in limine to preclude the testimony of the late-identified experts. On November 2, 1995, Judge Herron granted the motion.[2]

In the opinion accompanying his order and attached hereto as an appendix, Judge Herron noted that plaintiffs'

---

1. On September 1, with the outcome of her petition still pending, plaintiffs' counsel Black submitted to defendants' counsel a notice of deposition, in which she signalled her intent to depose defendant Rossi, presumably for the first time, on Wednesday, October 5, 1995. She invited defense counsel Ruane to attend the deposition. Mr. Ruane, in an October 4 response, declined the invitation and answered that he would not produce his client Rossi since the deadline for witness discovery had long since expired.

2. On October 25, 11 days before the scheduled start of trial, plaintiffs submitted to defendants Mr. Bunin's "actuarial and economic report" relating to the "loss of household services and earning capacity" of decedent Gray. Plaintiffs have yet to submit any information disclosing the content of Mr. Brown's anticipated report and related testimony.

identification of experts and the substance of one expert's report so close to trial had substantially and irremediably prejudiced defendants. J. Herron op. at 536-38. "Defendants are left with no time to evaluate and respond to the expert testimony." *Id.* at 538. Judge Herron reasoned that the drastic measure of preclusion was warranted since plaintiffs had violated a pair of court orders, Administrative Order 94-3, which established a March 18, 1994 motion filing deadline in this case, and Order 94-4, which required that plaintiffs in this case "fully and completely" answer all expert interrogatories propounded upon them by defendants no later than May 30, 1994. Further, Administrative Order 94-4 warned that failure to comply would result in preclusion of that expert's testimony at trial. J. Herron op. at 536. Judge Herron explained that the court's strict adherence to its published deadlines for motion filing and expert discovery were aimed at providing a "level playing field" for parties preparing for trial, preventing prejudice and "trial by ambush." *Id.* at 534. He emphasized that the court's enforcement of its deadlines and preclusionary sanctions was crucial to the continued success of the Civil Trial Division's Day Backward Program, which has dramatically reduced the backlog of cases by providing litigants with predictable, firm trial dates and a system of well-supervised pre-trial settlement conferences. *Id.* at 540-42.

Defendants filed a second motion in limine in three counts before this court, in which they sought to preclude plaintiffs from introducing at trial any evidence "testimonial or documentary" relating to claims for damages resulting from the accident.[3] In Count I of their motion,

---

3. Defendants filed their second motion in limine on October 19, 1995 and plaintiffs answered in opposition thereto on October

defendants sought to exclude any evidence of plaintiffs' decedent's past or future lost earnings and other financial losses. In Count II, defendants sought to bar evidence of damages linked to plaintiffs' wrongful death action, including the decedent's past and future contributions to family support and the pecuniary value of her services to her children.[4] In their brief in support of their motion, defendants argued that they had served two sets of detailed interrogatories upon plaintiffs soon after the start of the suit in order to calculate plaintiffs' claims for damages in advance of trial, to which plaintiffs had responded in May 1991, with useless answers. For example, plaintiffs had responded "unknown" or "unknown at this time" to questions asking for a list of Ms. Gray's past employers, related dates of employ and rates of pay and "not known at this time, will be provided when available" to requests for decedent's earnings as reported on her recent federal tax returns and for information as to whether copies of those tax returns had been retained. Defendants noted that, moreover, plaintiffs' responses provided no evidence that Ms. Gray had contributed any financial or other support to her family and no evidence regarding the pecuniary value of such services. Defendants contended that plaintiffs had never supplemented their answers in the four years that followed, despite plaintiffs' repeated assurances in the interrogatories that they would provide

---

30. This second motion was presented to this court on November 3, 1995 since this court had been assigned the case and trial was due to commence on November 6.

4. Count III sought to preclude plaintiffs' evidence regarding a claim for funeral expenses incurred by the death of decedent Ms. Gray. For reasons unrelated to this opinion, plaintiffs withdrew that claim for the present time. Consequently, defendants withdrew Count III of their motion in limine.

"information when available," including a "forensic economic report" to be provided at an unspecified "later date."[5] Defendant's brief in support of second motion in limine, at 1-3.

On November 3, 1995, this court granted defendants' second motion in limine, Counts I and II, on the grounds that plaintiffs had incurably and inexcusably prejudiced defendants by failing to provide them with timely and satisfactory information regarding plaintiffs' claims for damages. Defendants Rossi and Philadelphia Newspapers Inc. then moved for summary judgment based upon plaintiffs' acknowledged inability to present a case for provable damages under the Wrongful Death and Survival Acts. Plaintiffs did not oppose the motion.

On November 16, 1995, the court directed plaintiffs to file a statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). In their statement, submitted on December 1, 1995, plaintiffs enumerated as grounds for their appeal that: (1) the court erred in granting defendants' motion for summary judgment; (2) the court erred in granting defendants' first motion in limine, because defendants were not prejudiced by plaintiffs' disclosure of experts six weeks before trial; (3) the court erred in granting defendants' second motion in limine, since plaintiffs answered interrogatories and defendants never filed motions to compel further discovery or to request sanctions; (4) the "verdict was contrary to law;" and (5) the "verdict was contrary to the evidence." In this opinion, the court addresses the first three matters. We do not address the last two

---

5. In fact, the only supplemental information that plaintiffs offered since 1991 was the expert report of Mr. Bunin, submitted to defendants on October 25, 1995, and precluded as late-identified expert testimony by Judge Herron in his order granting defendants' first motion in limine, discussed *supra.*

which are inappropriately raised in this pre-trial summary judgment context: no verdict was ever rendered in this case.

## II.

The standard for summary judgment in this Commonwealth is set forth in Pa.R.C.P. 1035. A grant of summary judgment is properly rendered if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). In order to prevail against a motion for summary judgment, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing there is a genuine issue for trial." Pa.R.C.P. 1035(d). If a defendant shows that a plaintiff cannot present one of the necessary elements of a prima facie case against defendant, even with all factual disputes resolved in the plaintiff's favor, then summary judgment is properly granted. See *Godlewski v. Pars Manufacturing Co.,* 408 Pa. Super. 425, 431, 597 A.2d 106, 109 (1991).

In the case sub judice, the court granted defendants' two motions in limine, thereby precluding plaintiffs from offering expert testimony and all other testimonial and documentary evidence relating to their claims for damages. Without provable damages, plaintiffs were unable to establish an essential element needed to bring a cause of action under the Wrongful Death and Survival Acts, and summary judgment was therefore proper. See also *Spitofsky v. Wertheimer,* 28 Phila. 52 (1994) (court properly granted defendants' motion for summary judgment after court precluded plaintiff from offering expert

testimony, thereby rendering him unable to prove medical malpractice claim), *affirmed,* Pa. Super. 03013 PHL 94, allocatur pending.[6]

The Wrongful Death and Survival Acts are purely compensatory in nature, and were created to address the claims for damages brought by two different categories of beneficiaries who lay claim to two separate sources of damages. The Supreme Court explains the distinction as follows:

"Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. . . . The damages recoverable in a wrongful death action include the present value of the services the deceased would have rendered to the family, had she lived, as well as funeral and medical expenses. . . .

"A survival action, on the other hand, is brought by the administrator of the decedent's estate in order to recover the loss to the estate of the decedent resulting from the tort. . . . The measure of damages awarded in a survival action include the decedent's pain and suffering, the loss of gross earning power from the date of injury until death, and the loss of his earning power—less personal maintenance expenses, from the time of death through his estimated working life span. . . .

"These two actions are designed to compensate two different categories of claimants the spouse and/or members of the decedent's family for wrongful death of the decedent and the decedent herself through the legal person of her estate. . . . However, the actions for damages are cumulative and are not to overlap or result

---

6. The opinion of the Superior Court in *Spitofsky* is unreported.

in duplication of damages." *Kiser v. Schulte,* 538 Pa. 219, 226-27, 648 A.2d 1, 4 (1994). (citations omitted)

It is well-settled that one seeking to procure a share of wrongful death proceeds must prove both a "family relationship and *pecuniary loss* before he may be included in the distributional schedule." *Manning v. Capelli,* 270 Pa. Super. 207, 213, 411 A.2d 252, 256 (1979). (emphasis added) Pecuniary loss in the context of a wrongful death claim "is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased." *Saunders v. Consolidated Rail Corp.,* 632 F. Supp. 551, 553 (E.D. Pa. 1986) (citing *Gaydos v. Domabyl,* 301 Pa. 523, 530, 152 A. 549, 551 (1930) and applying Pennsylvania law). Thus, "[s]ervices, gifts, education, training and advice can all be elements of an individual's pecuniary loss," if they were rendered with a "frequency that begets an anticipation of their continuance; occasional gifts and services are not sufficient on which to ground a pecuniary loss." *Id.*

Pennsylvania law "does not require that proof in support of claims for damages or in support of claims for compensation must conform to the standard of mathematical exactness." *Blackburn v. Aetna,* 368 F.2d 345, 347 (3d Cir. 1966) (widow who could reliably approximate the past gross earnings and expenses of her deceased husband's business, allowing jury to predict probable future earnings and expenses, sufficiently proved damages under Wrongful Death and Survival Acts). Rather, "if the facts afford a reasonably fair basis for calculating how much plaintiff is entitled to such evidence cannot be regarded as legally insufficient to support a claim for compensation." *Id.* at 348. (citations omitted) The law "only requires that a reasonable quantity of information must be supplied by plaintiff so

that the jury may fairly estimate the amount of damages from the evidence." *Id.* (citations omitted) The measure of damages is to be "based on the best available evidence even though such evidence does not constitute precise proof." *Pine v. Synkonis,* 79 Pa. Commw. 479, 488, 470 A.2d 1074, 1078-79 (1984) (decedent's brief earning history as a taxi operator was sufficient to provide useful and reliable evidence for the jury in calculating projected lost future earnings in his wrongful death action).

In this case, however, plaintiffs' responses to interrogatories failed to supply even a "reasonable quantity of information" to support provable damages under their wrongful death and survival claims.

As discussed earlier, defendants' counsel, in preparation for trial, served two sets of detailed interrogatories upon plaintiffs, asking the nature and amount of damages sought. Plaintiffs' responses were consistently uninformative. These examples are illustrative:

*"Defendant interrogatory 14:* At the time of the accident what was the nature of your employment and/or occupation? Describe your usual duties and labors.

*"Plaintiff response:* Employment unknown at this time.

*"Defendant interrogatory 19:* State the name and addresses of each of your employers for the five years immediately preceding the accident, and as to each, state the period of employment, the dates thereof, the rate of pay, your total income and approximately the number of days you were absent from work each year.

*"Plaintiff response:* Unknown.

*"Defendant interrogatory 22:* If you are claiming loss of earnings as a result of the accident, state the total amount of such loss.

*"Plaintiff response:* Amount unknown at this time, but will be provided at a later date." Defendant's brief in support of second motion in limine, exh. A.

*"Defendant interrogatory 13:* State separately the earnings of decedent and decedent's spouse as reported on federal income tax returns for the year of decedent's death and for each of the five years immediately preceding decedent's death.

*"Plaintiff response:* Not known at this time. Will provide that information when available." Defendant's brief in support of second motion in limine, exh. B.

Plaintiffs later sought to provide specific calculations regarding damages through an expert report submitted on the eve of trial. As discussed earlier, Judge Herron precluded this evidence in his order granting defendants' first motion in limine. In his attached opinion, Judge Herron detailed the evidently "disdainful and contemptuous attitude" and the "pattern of dilatory, vexatious and obdurate behavior" of plaintiffs' counsel. J. Herron op. at 542 . Under the "coordinate jurisdiction" principle, which mandates that judges of a coordinate jurisdiction sitting in the same case should not overrule each other, this court is bound by that order. *Commonwealth v. Starr,* 541 Pa. 564, 578, 664 A.2d 1326, 1331 (1995). Then, for the reasons discussed earlier, this court granted defendants' second motion in limine, thus precluding any other plaintiff evidence regarding damages. Taken together, these preclusionary orders render plaintiffs unable to present evidence of provable damages to the fact-finder.

Accordingly, when all of the testimony is examined in the light most favorable to the plaintiffs, there is no genuine issue of material fact on the crucial element of damages under the Wrongful Death and Survival

Acts. Defendants' motion for summary judgment was properly granted.

## III.

Plaintiffs concede that they are unable to establish a prima facie case under the Wrongful Death and Survival Acts as a consequence of the court's preclusion of their evidence relating to damages. They contend, however that the sanctions are unwarranted and improper here, since they effectively divested plaintiffs of their *statutory* right to bring a wrongful death claim. Plaintiffs' brief in opposition to second motion in limine at 26. According to plaintiffs, sanctions for failure to respond to discovery requests are "generally not imposed until there has been a refusal to comply with a court order directing compliance." Plaintiffs' brief at 15. These contentions, however, are without merit.

It should be noted that the imposition of sanctions is within the discretion of the trial court. *Dion v. Graduate Hospital of University of Pennsylvania,* 360 Pa. Super. 416, 428, 520 A.2d 876, 882 (1987). It is true, however, that preclusion of evidence is a drastic measure and that, "[i]n practice, sanctions for noncompliance with discovery requests are generally not imposed until there has been a refusal to comply with a court order compelling compliance." *Green Construction Company v. PennDOT,* 164 Pa. Commw. 566, 586, 643 A.2d 1129, 1139 (1994). When appropriate, the sanction of preclusion of testimony may be imposed even where "it would effectively prevent a party from prevailing on her claim." *Dion, supra* at 429, 520 A.2d at 883. *Dion,* which affirmed the opinion of this trial court, held that the court properly precluded plaintiff from

introducing testimony of two experts on the issue of the adequacy of warnings on a drug package insert, where one expert report was submitted two weeks before trial and another on the first day of trial, even though such preclusion led to a grant of nonsuit against plaintiff in her products liability claims against drug-manufacturer defendant. *Id.* at 426-29, 520 A.2d at 881-83. See also, *Spitofsky v. Wertheimer, supra.* In the instant case, plaintiffs, in fact, did fail to comply with a pair of court orders: first, Administrative Order 94-3, which explicitly set forth a March 18, 1994 deadline for filing motions in this case, including discovery motions; and second, Administrative Order 94-4 which established May 30, 1994 as the final date for plaintiffs to identify their experts in response to defendants' interrogatories. Further, the sanctions for non-compliance were explicit: Order 94-4 mandated the preclusion of the testimony of any expert witness not identified in accordance with the order. The orders allowed parties to seek extensions from the time requirements by filing a petition for extraordinary relief to the administrative judge of the trial division, provided only that the petition was filed *prior to the applicable deadlines* set forth in the orders. Here, plaintiffs filed their petition for relief in August 1995, more than a year after the motion-filing and expert-discovery deadlines had expired.

Plaintiffs further argue that their answers "unknown" and "unavailable" to defendants' interrogatories asking plaintiff to identify decedent's employers, tax returns, amounts of lost wages, and other details of damages are not fatal, since they planned to supplement these responses at a later time. Plaintiffs point out that, in fact, they identified an economic expert in September

1995, six weeks before trial, and turned over an expert report in October 1995. Thus, in their opinion, defendants suffered no actual prejudice. According to plaintiffs, defendants could have filed a motion to compel production of evidence, or alternatively, defendants could easily have cured any unfairness by simply requesting "a brief continuance of the trial." Plaintiffs' brief at 14. Plaintiffs argue that because no motion to compel was ever made, it follows that they violated no identifiable order or rule of the court.

Next, plaintiffs contend that even if they have violated the Day Backward Program's cut-off dates in Administrative Orders 94-3 and 94-4, they should not be precluded from offering their evidence, since these local orders conflict with—and must yield to—Pennsylvania's Rule of Civil Procedure 4007.4, which, according to plaintiffs, allows a party to supplement its answers to interrogatories up to the time of trial. Plaintiffs' brief at 25-26.

Plaintiffs' contentions are unpersuasive. Plaintiffs raised the identical arguments when they opposed defendants' first motion in limine. Like Judge Herron in that instance, we dispose of these arguments now by noting, first, that plaintiffs violated administrative orders of the court and second, that these local discovery and motion orders are in perfect accord with the rules of the Commonwealth. Thus, we point out that Pa.R.C.P. 4007.4(2) imposes a continuing obligation upon a party or expert witness to automatically supplement *prior responses* when he becomes aware that the initial response was incorrect or no longer true, but it does not excuse failure to respond initially to interrogatories. And, Pa.R.C.P. 4006, like Administrative Order 94-4,

requires that interrogatories be answered "fully and completely." Moreover, Pa.R.C.P. 4003.5(b) and Pa.R.C.P. 4019(c)(2) and 4019(i) provide for sanctions—preclusion of the testimony of witnesses and other evidence that were not identified in the course of discovery—that correspond to the sanctions pronounced in the local rule.

Here, the record shows that plaintiffs failed to supplement their woefully inadequate responses to defendants' timely interrogatories until late in 1995, long after the required cut-off dates. The second expert's promised report has never been turned over to opposing counsel. Plaintiffs now argue that although the court has precluded their use of expert witnesses, they could present lay testimony at trial to prove their claims for damages. Pre-trial notes of testimony at 17. But these assurances on the eve of trial cannot cure the prejudice to defendants, who still lack any means, pre-trial, of calculating plaintiffs' damages. Moreover, the court notes that plaintiffs' unexplained failures to appear at two scheduled settlement conferences sacrificed valuable pre-trial opportunities to communicate with opposing counsel and move the case along to resolution.

Additionally, plaintiffs' filing of a petition for extraordinary relief to conduct additional discovery more than a year after the well-publicized deadlines set forth in the court's administrative orders disrupted the orderly proceedings of the court and prejudiced defendants in advance of trial for no compelling reason.

IV.

For all of the above reasons, defendants' motion in limine and motion for summary judgment were granted.

APPENDIX

HERRON, *J.,* November 2, 1995—This opinion supports the contemporaneously filed order in which the court precludes plaintiff's presentation of the testimony of expert witnesses, David Bunin and Daniel Brown, because plaintiff did not identify the witnesses until six weeks prior to trial, more than one year after the cut-off dates set in Administrative Orders 94-3 and 94-4. Moreover, while plaintiff orally identified these two experts six weeks prior to trial, he failed to furnish one expert's report until 11 days prior to trial and has yet to furnish the second expert's report even though this case proceeds to trial tomorrow, thereby evidencing complete and utter disregard for the administrative orders of this court as well as prejudicing defendant.

## BACKGROUND

Plaintiff began this suit by writ on June 4, 1990. In the subsequently filed complaint, plaintiff claimed damages under the Wrongful Death and Survival Acts for personal injuries arising from a motor vehicle accident. The motor vehicle accident occurred on or about June 3, 1988, when a vehicle owned by defendant Philadelphia Newspapers Inc. and operated by defendant Rossi struck and killed plaintiff's decedent, a pedestrian. At this juncture, it appears that the primary factual dispute revolves around whether Rossi negligently struck decedent or whether decedent was pushed, struck, or otherwise forced into Rossi's path by a third person.

On September 19, 1995, attorneys for all parties appeared at a trial scheduling conference, at which trial

was set for November 6, 1995.[1] At the conference, plaintiff's attorney orally identified, for the very first time, two expert witnesses who were expected to offer testimony about their opinions at the trial of this matter. Following the conference, defendants moved the court in limine to preclude the two experts identified on September 19, 1995 from testifying at trial. Plaintiff provided the report of one late-identified expert on October 26, 1995. As of the writing of this opinion, the second expert's report had not yet been provided to defendants although trial commences in one day.

The basis for the defendants' motion is the procedure and practice developed in this court over the last three years known as the Day Backward Program. Under the Day Backward Program, cases are categorized by the date in which the plaintiff initiated suit. For each category of cases, the administrative judge of the First Judicial District issues an administrative order which imposes deadlines for discovery and motion practice on all cases in the category.

This case was part of the group of cases filed from October 1989 to June 1990. That category of cases is subject to Administrative Order no. 94-3 which provides:

*"Whereas* the Court of Common Pleas of Phila. County has been engaged for the past 12 months in an initiative to reduce the inventory of pending civil actions, and;

---

1. By notice dated July 26, 1995, Administrative Judge Bonavitacola issued notice to counsel to appear before this judge for a trial scheduling conference on September 19, 1995 and further advising that a trial date between four and 15 days would likely be established.

*"Whereas* the success of the initiative to date has been dependent on members of the bar serving in the capacity of settlement masters and facilitators, and;

*"Whereas* experience has shown that settlement conferences are more productive when all motions have been resolved, and;

*"Whereas* cases filed between October 1989 and July 1992 will soon be assigned for mandatory settlement conferences, the following is ordered:

## ORDER

"And now, January 25, 1994, the following dates are established as the last date on which all motions in major jury cases, including those involving discovery, will be accepted for filing. Motions in limine are excluded from this order. While discovery motions must also be filed by the specific date for the various cases captioned, follow-up discovery motions including but not necessarily limited to sanctions requests, protective orders and discovery in aid of execution, may be filed as required. Relief from this order may be sought only through the filing of petition for extraordinary relief which shall be referred for decision to the administrative judge of the trial division or his designee.

"Cases captioned 8910 through 9006—last date for filing is 3/18/94."

In addition, this case is subject to Administrative Order no. 4 of 1994, which provides:

"Day Backward Expert Discovery
Cut-Off Dates for Major Jury Cases
Captioned October Term, 1989
through June Term 1990

## ORDER

"And now, March 17, 1994, in order to enable the court to hold settlement conferences and schedule trial dates so as to promptly dispose of major jury cases in the Day Backward Program filed and captioned October Term 1989 *(i.e.* 8910) through June Term 1990 *(i.e.* 9006), it is hereby ordered and decreed as follows:

"(1) All expert interrogatories propounded upon plaintiffs as provided in Pa.R.C.P. no. 4003.5 shall be fully and completely answered no later than May 30, 1994.

"(2) All expert interrogatories propounded upon defendants and additional defendants as provided in Pa.R.C.P. no. 4003.5 shall be fully and completely answered no later than June 30, 1994.

"(3) Relief from the time requirements of paragraphs 1 and 2 of the order may only be granted prior to the expiration of the cut-off dates provided in paragraphs 1 and 2 of this order by the administrative judge of the trial division, upon petition filed with the prothonotary and motion court, prior to the applicable deadline established by paragraph 1 or 2, and captioned: *'Petition to Administrative Judge Asserting Extraordinary Circumstances for Relief From Day-Backward Expert Discovery Cut-Off'* establishing extraordinary circumstances for such relief. Any response must be filed with motion court within 10 days after the filing of the petition.

"(4) Parties shall be precluded from offering at trial testimony from any expert witness for whom expert interrogatories are not answered in accordance with paragraphs 1 and 2 of this order, except as may otherwise be determined in the interest of justice, by the Day Backward Judicial Team Leader.

"It is further ordered and decreed that this order shall not:

"(a) extend any deadlines for submission of expert interrogatories established by any particular case by prior order of any judge of this court; or

"(b) modify any preclusion orders for any particular cases previously issued by any judge of this court.

"This order is issued in accordance with the April 11, 1986, order of the Supreme Court of Pennsylvania, Eastern District, no. 55 Judicial Administration, Docket no. 1, as required by Pa.R.C.P. no. 239, the original order shall be filed with the prothonotary in a docket maintained for administrative orders issued by the administrative judge of the trial division, and copies shall be submitted to the Administrative Office of Pennsylvania Courts, the Legislative Reference Bureau and the Civil Procedural Rules Committee. Copies of the regulation shall also be submitted to Legal Communications, Ltd., *The Legal Intelligencer*, Jenkins Memorial Law Library and Law Library for the First Judicial District." (As amended 4/12/94.)

Defendants' argument is quite simple. Plaintiff identified the experts after the May 30, 1994 cut-off date established by Administrative Order 94-4, therefore, Administrative Order 94-4 mandates the preclusion of plaintiff's late-identified experts. In addition, defendant argues that permitting plaintiff to identify additional expert witnesses at this late date would be prejudicial to defendant's ability to try the case. Plaintiff asks the court to examine the issues raised by this motion in a different fashion. Rather than using the calendar cut-off determined by Administrative Order 94-4, plaintiff argues that the court should substantively evaluate the parties' positions and determine whether plaintiff's late identification of experts has surprised or prejudiced the

defendants. For the reasons which follow, the court finds that plaintiff's late-identified experts must be precluded.

## APPLICABLE LAW

The *stare decisis* developed on the issue of precluding witnesses has been most clearly described in *Feingold v. SEPTA,* 339 Pa. Super. 15, 488 A.2d 284 (1985), *affirmed,* 512 Pa. 567, 517 A.2d 1270 (1986), where the Superior Court set forth the following considerations in deciding a motion to preclude:

"(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith [or] willfulness in failing to comply with the court's order." *Id.* at 21, 488 A.2d at 288. In addition, Rules 4003.5 and 4019 of the Pennsylvania Rules of Civil Procedure bear on this issue. Rule 4003.5 provides, in pertinent part:

"(a) Discovery of facts known and opinions held by an expert otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

"(1) A party may through interrogatories require

"(a) any other party to identify each person whom the other party expects to call as an expert witness. . . .

"(b) If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action. . . ."

Rule 4019 provides, in pertinent part:

"(a)(1) The court may, on motion, make an appropriate order if

"(i) a party fails to serve answers, sufficient answers or objections to written interrogatories under Rule 4005. . . .

"(c) The court, when acting under subdivision (a) of this rule, may make

"(2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents, things or testimony, or from introducing evidence of physical or mental condition. . . ."

While the thrust of the Rules of Civil Procedure is to require the parties to avoid trial by ambush and to try the issues on a level field, the rules do not preclude the court from taking steps to regulate its docket at the parties' expense where the parties' conduct delays or obstructs the administration of justice. See *e.g., Zito v. Merit Outlet Stores,* 436 Pa. Super. 213, 647 A.2d 573 (1994). The First Judicial District has long suffered from an enormous backlog of civil cases. The Day Backward Program has been a remarkably effective protocol by which this backlog has been reduced. To date, more than 19,373 cases have been resolved through this program. See Civil Statistical Summaries of the Court of Common Pleas, First Judicial District (Exhibit 1) (of 23,112 cases pending in the program on January 4, 1993, only 3,739 remained on August 7, 1995). The Day Backward Program results are a boon to all of Philadelphia, including all plaintiffs. Cases now come to trial within three to four years, as opposed to the

five to seven years it took before the program came about.[2]

Most importantly, the Day Backward Program has created a level playing field and a firm trial date for parties. The discovery cut-off dates allow parties to prepare for trial without suspecting or fearing that their adversaries will produce previously undisclosed evidence on the eve of trial. Similarly, the motion cut-off dates permit parties to prepare for trial without having to spend their time arguing legal issues.

This level playing field and firm trial dates were missing in Philadelphia for a long time. For many years, parties were resigned to have their cases resting in poorly defined pools. Trial dates were unpredictable and could be put off at will by either party. Similarly, parties were rather unrestricted in their ability to identify witnesses and evidence as late as they chose, often as late as during trial, oftentimes wasting judicial time in sorting out which attorney unfairly disadvantaged the others.

In the pre-Day Backward days, the First Judicial District's inability to provide parties with even a reliable window for a trial date made it unfair for the court to impose deadlines for motions and discovery. A discovery cut-off might come years before a case came

---

2. As an aside, it is worth mentioning that the First Judicial District has also begun a case management program, called the Day Forward Program, into which all cases filed after January 1, 1995 are categorized. The goal of the Day Forward Program is to ensure that all but complex civil cases filed in the First Judicial District are resolved within two years of filing. See *Bonavitacola Urges Cooperation for Day Forward, an Open Letter to the Bar, The Legal Intelligencer,* April 26, 1995.

to trial.[3] In addition, the parties conceivably would never have had a supervised settlement conference or any other proceeding in which they were required to lay all their cards on the table.

Under the Day Backward Program, each case is conferenced before a settlement master, a judge pro tempore and, if deemed helpful, a trial judge. Following the settlement conference before the judge pro tempore, the parties to each case appear before the assigned Day Backward Team Leader[4] for trial scheduling.[5] Under this system, the parties proceed to trial with a clear understanding of the issues to be tried and their potential fate at trial. Nearly all of the cases in the Day Backward Program settle before verdict, with most settling during the conference period.

Clearly, civil practice before the Court of Common Pleas of the First Judicial District has changed dramatically during the Day Backward Program. Central to this change is the requirement of predictability and openness imposed by the administrative orders.

---

3. At the outset of the Day Backward Program in November 1992, the First Judicial District Court of Common Pleas resolved exclusively cases filed before October of 1989. The cases in that category numbered approximately 6,300, and included cases which were initiated as early as 1977. See Exhibit 1.

4. The trial judges working in the Day Backward Program are divided into teams of approximately three judges. Each team is led by a judge who is responsible for scheduling all of the team's cases for trial and assigning the cases to a judge for trial.

5. Cases which are deemed to have no chance of settling are sometimes routed around the judge pro tempore directly to a trial scheduling conference.

## DISCUSSION

### A.

Plaintiff's contentions against the preclusion of the late-identified witnesses will be addressed seriatim.

(1) Plaintiff first contends that the witnesses should not be precluded because the late identification was not violative of any court order or rule. This contention is clearly in error, as this case was subject to Administrative Orders 94-3 and 94-4. Those orders required that plaintiff "fully and completely" answer all expert interrogatories propounded upon plaintiff no later than May 30, 1994. Plaintiff violated this order by failing to provide expert witness interrogatory answers for the witnesses until September of 1995 and even at this late date failing to provide one of the two expert reports.

Administrative Order 94-4 provided for a sanction for its violation as well, mandating the preclusion of any expert witness not identified in accordance with the order.

(2) Plaintiff next contends that defendants cannot possibly be prejudiced by the late identification of experts because defendants did not show any prejudice. However, it is clear that defendants are prejudiced per se in this case. The defendants have been led to believe since May 30, 1994, that expert discovery by plaintiff is finished. Defendants have relied on this belief to formulate their position in settlement negotiations, trial preparation and their own expert discovery. By assigning their case to the Day Backward Program, this court in effect promised the defendants that they could rely on the expert discovery produced as of May 30, 1994. To now go back on that promise and force defendants to come to grips with new expert testimony is certainly

prejudicial. In addition, the defendants are obviously prejudiced by now having to spend their time and money analyzing additional expert testimony and possibly securing additional expert testimony of their own.

One purpose of the Day Backward Program was to eliminate precisely this type of prejudice. The parties were assured that, as of a date certain, they would be in a position to evaluate their positions and their adversaries' positions. Plaintiff's attempt to disrupt this assurance clearly causes prejudice to the defendants' reasonable expectations.[6]

(3) Plaintiff next contends that defendants have ample time between the identification of the expert witnesses and trial in which to cure the prejudice and surprise foisted upon them by the late identification. This court rejects the notion that it must consider the amount of time between plaintiff's late identification of expert witnesses on the eve of trial in deciding whether the witnesses should be precluded from testifying. As discussed above, the court presumes prejudice under the facts of this case.

(4) Plaintiff also contends that his experts should not be precluded because their testimony "would [not] disrupt the orderly and efficient trial of the case or of other cases in the court." This contention is simply wrong. This case, along with many others, has been carefully scheduled into a crowded docket, where it is to receive precious judicial and community resources. The only way this case could go to trial including the testimony of the late-identified witnesses would be if

---

6. Plaintiff also suggests that he is entitled to a hearing on the issue of prejudice. Plaintiff has provided no authority for this proposition. In addition, this court is unaware of any authority which requires it to afford a hearing to a party who violates a court order to determine the propriety of the violating party's conduct.

the trial were delayed to allow defendants an opportunity to contend with those witnesses' proposed testimony. Such a delay would be disruptive to the efficient and just administration of justice in this case and in many others.

This court rejects plaintiff's invitation to evaluate this motion on a prejudice basis and precludes the late-identified witnesses because their late-identification violated the court's administrative orders. Nonetheless, the court feels compelled to point out that plaintiff's late identification does substantially prejudice the defendants here. While plaintiff identified the late experts on September 19, 1995, he did not furnish the experts' reports then. Plaintiff furnished the first expert report to defendants on October 26, 1995, a mere 11 days before trial. As of the writing of this opinion, the second report has not even been furnished to defendants! Providing an adversary with expert witness testimony so close to trial is clearly prejudicial. Defendants are left with no time to evaluate and respond to the expert testimony.[7] This short notice of the substance of plaintiff's expert witnesses' testimony prejudices defendants' ability to prepare for trial and defend this case. This prejudice becomes clearer when viewed in light of the fact that plaintiff could have identified expert witnesses to his heart's content from June of 1990 until May 30, 1994, four years.

### B.

In the alternative, plaintiff argues that Administrative Order 94-4 is a local rule in contravention with the

---

7. In fact, it appears that defendants will have to contend with the opinion of one of plaintiff's experts *during* trial. What plaintiff here proposes is not only prejudicial, it is trial by ambush.

Pennsylvania Rules of Civil Procedure and is therefore invalid pursuant to Pa.R.C.P. 239(b)(1). The administrative order is purportedly in conflict with Rule 4007.4(3), which provides:

"A party or an expert witness who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

"(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties or at any time prior to trial through new requests to supplement prior responses."

Plaintiff reads this rule to give him the right to provide answers to expert witness interrogatories at any time he wishes up to the day of trial. Plaintiff claims this right is free from any possible time restraint save trial.

First, the court rejects plaintiff's myopic and illusional application of Rule 4007.4(3). The rule regards the duty of a party to provide supplemental answers to interrogatories and does not establish an unfettered right to identify expert witnesses up to the time of trial.[8] In this case, the court ordered the final supplement of interrogatories to occur no later than May 30, 1994. Plaintiff, who has failed to comply with that order, cannot now rely on Rule 4007.4(3) to escape the reality of his failure to timely make discovery.

Secondly, the administrative order is clearly in accord with the Rules of Civil Procedure. The process set forth in the Day Backward Program follows the sanctions

---

8. It should also be noted that plaintiff never identified the experts before September 19, 1995, therefore the experts' answers to interrogatories could not possibly be supplements to previous answers to interrogatories.

permitted by Rule 4019. Pursuant to that rule, the court may order the preclusion of witnesses where a disobedient party fails to make expert discovery in accordance with a court order. Here, the plaintiff was required to make discovery in accordance with the court order setting a cut-off date for expert discovery. Plaintiff failed to comply with that order and now must face the sanction contemplated by Rule 4019(c)(2), preclusion.

Thirdly, Rule 4003.5 mandates the preclusion of an expert where the expert is not identified in accord with its procedure. Here, defendants served plaintiff with interrogatories pursuant to Rule 4003.5. The court subsequently ordered plaintiff to respond to those interrogatories by a certain date. Plaintiff failed to comply with the interrogatories and the order that plaintiff respond to those interrogatories. Therefore, Rule 4003.5(b) requires the preclusion of plaintiff's late-identified witnesses.

Clearly, the court's administrative orders are not in conflict with any Rules of Civil Procedure.

## C.

Counsel's lack of diligence and deliberate violation of the applicable administrative orders deserves censure.

Day Backward I and subsequent phases represents a clarion call to all trial practitioners that innovative rules, an involved bar and dedicated judges can deliver timely resolution of disputes in a major urban center with a history of doing otherwise. The Day Backward protocol was developed with the personal interest and involvement of Justices of the Supreme Court of Pennsylvania working in cooperative spirit with the administrative judge and leaders of the local bar to assure

the development of a case management system to address a crushing and undiminished backlog of 27,000 untried major civil cases. In no small measure, this program's successes stem from the dedicated efforts of many attorneys who serve as masters and judges pro tem conferencing these cases and resolving 36.9 percent at the master level and 35.2 percent at the pro tem level. Apart from ending trial by ambush and the preparation of cases on the eve of trial, a major focus of the Day Backward protocol has been to encourage and/or compel counsel to prepare cases in a more methodical and efficient fashion and at an earlier time in the life of the case. Thus, the raison d'etre for the cut-off dates is to assure the exchange of expert reports not only to allow parties early identification of theories of liability, causation and damages, but also to require production of such reports prior to master and pro tem conferences to allow for meaningful valuation and settlement discussions.

In the context of the above comments and now three years into the Day Backward Program, a few practitioners continue to enjoy all the court's efforts and those of volunteer masters and pro tems while deliberately eschewing any efforts of their own to contribute to the process to resolve their clients' matters. This case offers such a worst case scenario. Here, plaintiff's and defendant's counsel were noticed to appear for a master's conference before Master Martin K. Brigham, Esquire on April 27, 1994. Both counsel failed to appear and failed to return his telephone calls necessitating scheduling a second conference for June 26, 1995. Again, without even the courtesy of advance notice, plaintiff's counsel failed to appear, although defense

542

counsel did so. Only after the conference was Mr. Brigham finally able to talk to plaintiff's counsel, Ms. Black, who then advised him, now 14 months after the initial conference, that discovery was incomplete, no depositions had been taken and answers to expert interrogatories had not been provided.

Mr. Brigham appropriately recommended not wasting the time on a second level conference and referred the matter for trial.

The above narrative is offered to more fully explain an evident disdainful and contemptuous attitude by plaintiff's counsel for the procedures established to resolve her client's matter and to underscore the pattern of dilatory, vexatious and obdurate behavior of counsel.

## CONCLUSION

For all the foregoing reasons, plaintiff is precluded from producing expert witnesses David Bunin and Daniel Brown at the trial of this matter.

BY THE COURT:
/s/John W. Herron, J.

## ORDER

And now, November 2, 1995, upon consideration of defendants' motion to preclude plaintiff's late-identified expert witnesses and response thereto, for all the reasons set forth in the contemporaneously filed opinion, it is hereby ordered that the motion is granted and plaintiff is precluded from presenting the testimony of David Bunin and Daniel Brown.